Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

PACK LAW
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500
Joseph A. Pack (*pro hac vice forthcoming*)
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl (*pro hac vice forthcoming*)
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel for Fuse 10, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 26-77-ELG |
| | ) | (Chapter 11) |
| TURNER DEVELOPMENT, LLC | ) | |
| | ) | |
| Debtor. | ) | |

## MOTION TO APPOINT CHAPTER 11 TRUSTEE

COMES NOW Fuse 10, LLC ("**Fuse 10**"), senior secured creditor in this action, by and through undersigned counsel, pursuant to section 1104 of title 11 of the United States Code, and moves this Honorable Court to order the United States Trustee to appoint a chapter 11 trustee in this case, and in support thereof states as follows:

### Preliminary Statement

Missing from section 7 of the Statement of Financial Affairs in this case are the four criminal actions brought against Tracey Turner ("**Mr. Turner**"), the eponymous principal of Turner Development, LLC (the "**Debtor**"), just weeks before this case was filed. Whether or not these ought to have been included is a fascinating question and one that likely turns on the construction of the word "involved," as used on the standardized form. But the technicalities of the exclusion are not the point: the real problem is that there is at least a strong inference that the

Debtor is being operated by a criminal whose felonious machinations have been perpetrated through the very entity now putatively yearning to reorganize.

While it is appreciated that Mr. Turner has kindly started signing monthly operating reports without availing himself of the constitutional right to remain silent, the paucity of other docket activity in this matter simultaneously informs the problematic construct instantly afoot. For some 118 days, little more than the barest case-originating filings graced the docket herein. Then, when a statutory exclusivity deadline neared, the Debtor suddenly saw fit to complete operating reports, seek an extension of time to propose a plan, and suggest a realtor ought to be employed. These actions are both too little and too late for a seemingly-mischievous entity that has used the automatic stay to keep creditors like Fuse 10 at bay for months on end.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the United States Trustee be directed to appoint a chapter 11 trustee in this case.

**<u>Legal Standard</u>**

1. Title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**") directs that a court "shall order the appointment of a trustee" either "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor . . . or if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . . ."[1]

2. While the "for cause" removal of section 1104(a)(1) of the Bankruptcy Code carries a not insignificant burden, this Honorable Court has long recognized that the best interest standard of section 1104(a)(2) is "more flexible" in nature.[2] Under the more flexible standard, the Court considers all relevant evidence, including the reputational standing of a debtor in possession.[3]

---

[1] 11 U.S.C. § 1104(a).

[2] *In re VVF Commc'ns Corp*., 41 B.R. 546, 550 (Bankr. D.D.C. 1984) (Bason, J.) (quoting *In re Brown*, 31 B.R. 583, 585 (D.D.C. 1983) (Flannery, J.)).

[3] *See Brown*, 31 B.R. at 585.

3. More recently, Judge Huennekens observed that the "flexible" standard commits a trustee's appointment to the equitable discretion of the bankruptcy court by balancing the relevant interests:

> Whether appointment of a Chapter 11 Trustee is in the interest of creditors, equity security holders and other interests of the estate requires a balancing of the interests against costs associated with the appointment. Appointment of a Chapter 11 Trustee must be in the interest of the estate generally. The standard under § 1104(a)(2) of the Bankruptcy Code is more flexible than those under § 1104(a)(1) and the determination lies within the sound discretion of the bankruptcy court.[4]

4. Moreover, even with respect to the "for cause" standard of section 1104(a)(1) of the Bankruptcy Code, "cause" is not specifically defined by the statute,[5] and courts have determined a panoply of acts (above and beyond the fraud and mismanagement of which the Mr. Turner stands accused), including "a failure to provide accurate schedules,"[6] and "filing perpetually inaccurate and untimely [] monthly operating reports,"[7] provide the requisite cause.

**Argument**

5. There are at least two separate grounds that well support the appointment of a chapter 11 trustee *sub judice*, under both the for cause standard of section 1104(a)(1) and the discretionary best interest standard of section 1104(a)(2): (i) the criminal proceedings—previously unannounced in this case—now pending against Mr. Turner; and (ii) the Debtor's marked intransigence and nonfeasance throughout the pendency of this case.

---

[4] *In re IPofA W. Oaks Mall, LP*, 2007 Bankr. LEXIS 3737, at *13–14 (Bankr. E.D. Va. Oct. 26, 2007) (citing *In re Bellevue Place Assocs.,* 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994)).

[5] *Byrd v. Johnson*, 467 B.R. 832, 843 (D. Md. 2012) (describing the list of "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause" in the statute as "nonexhaustive").

[6] *Tradex Corp. v. Morse*, 339 B.R. 823, 834 (D. Mass. 2006).

[7] *In re Peak Serum, Inc.*, 623 B.R. 609, 632 (Bankr. D. Colo. 2020).

## I. The Alleged Criminal Conduct of Mr. Turner Demands Appointment of a Chapter 11 Trustee.

6. Being a debtor-in-possession is a unique privilege counterbalanced by a hefty fiduciary charge. In this case, the Debtor appears neither capable of serving as a fiduciary nor inclined to timely heed that charge. The estate, meanwhile, appears to be potentially reorganizable—with assets supposedly well exceeding liabilities—and there is accordingly a plain sensibility in remaining in chapter 11 but deferring to the helm of a trusted professional whose integrity and temporal motivations are not prone to well-informed doubts.

7. The bringing of criminal charges against a debtor's principal has, historically, given rise to the appointment of a chapter 11 trustee.[8] Here, on or about February 4, 2026—just weeks before signing the petition in this case—Mr. Turner was charged with two counts of obtaining signature or property under false pretenses, with a value in excess of $10,000.00, and an additional two counts of violating securities laws in a manner leading to more than $20,000.00 in losses.[9]

8. The first category of charges are felonies punishable by, *inter alia*, a term of incarceration not to exceed ten years.[10] The second category of charges are also felonies and are similarly punishable by a term of incarceration not to exceed ten years.[11] Upon conviction, Mr. Turner would face up to forty years in prison for this rash of felonies. And, to sidestep the issue of whether a manager's alleged criminal conduct ought be imputed to a debtor entity for the

---

[8] *See, e.g.*, *Edwards Fam. P'ship, L.P. v. Johnson (In re Cmty. Home Fin. Servs. Corp.)*, 32 F.4th 472, 479 (5th Cir. 2022) (noting a trustee to have been appointed after a debtor's principal was charged with bank fraud); *In re Tribeca Mkt., LLC*, 516 B.R. 254, 260 (S.D.N.Y. 2014) (discussing a trustee's appointment following an indictment for tax fraud); *Gowan v. Amaranth Advisers L.L.C. (In re Dreier LLP)*, 2014 Bankr. LEXIS 11, at *1 (Bankr. S.D.N.Y. Jan. 2, 2014) (trustee appointed after the principal of a law firm was indicted in connection with a fraud scheme); *see also In re Piedmont Ctr. Invs., LLC*, No. 11-06178-8-JRL, 2011 Bankr. LEXIS 4659, at *2, *10 (Bankr. E.D.N.C. Sep. 8, 2011) (referring to an indictments for fraud, false pretenses, and identity theft as *prima facie* evidence of fraud).

[9] *See State of South Carolina v. Turner*, Case No. 2025A0210700316 (Aiken Co. S.C. 2026); *State of South Carolina v. Turner*, Case No. 2025A0210700317 (Aiken Co. S.C. 2026); *State of South Carolina v. Turner*, Case No. 2025A0210700318 (Aiken Co. S.C. 2026); *State of South Carolina v. Turner*, Case No. 2025A0210700319 (Aiken Co. S.C. 2026).

[10] S.C. Code § 16-13-240.

[11] S.C. Code § 35-1-508.

purposes of whether to appoint a chapter 11 trustee, these criminal charges all relate to Mr. Turner's management (or more accurately, ***mis***management) of the Debtor itself.[12]

9. To be sure, this is not a case where an entity borrowed money and then simply failed to make promised payments. Such would, of course, be utterly mundane in the chapter 11 context. Instead, this is a case where the Debtor's obligations include more than $1.6 million of facial liabilities procured on allegedly fraudulent grounds.[13] Mr. Turner is charged with taking money, promising persons that such would constitute investments, and then failing to actually tender securities.[14]

10. At least two of the named victims, Dr. Ansermo Arthur and W. Melissa Oden, are listed as "disputed" in the Debtor's *Schedule D: Creditors Who Have Claims Secured by Property*, and W. Melissa Oden is listed as "contingent," "unliquidated," and "disputed" in the Debtor's *Schedule E/F: Creditors Who Have Unsecured Claims*.[15] Tellingly, the alleged claims of Mr. Turner himself for "Unknown . . . Co-Debtor Obligations" are ***not*** disputed.[16] In light of the foregoing, there exist very real questions—meritorious of exploration by a trustee—as to whether or not the Debtor has even honestly accounted for liabilities on the schedules in this case and, by extension, caused appropriate notice to be sent to all creditors.[17] Not for nothing, section 1104(e) of the Bankruptcy Code separately obligates that "[t]he United States trustee shall move for the

[12] *See* Elizabeth Hustad, *Weeping Willows developer Tracey Turner facing felony charges, files for bankruptcy*, Post and Courier, May 11, 2026. Accessible online at https://www.postandcourier.com/northaugusta/government/tracey-turner-arrested-aiken-county-weeping-willows-development-files-bankruptcy/article_8eb2a6df-5c93-47b5-910b-a8078f9e332c.html (last accessed Jun. 30, 2026).
[13] *Id.*
[14] *Id.* ("Both warrants allege the money paid Turner, a combined $1.6 million, 'was withheld and no investment was made.'").
[15] Dkt. No. 11.
[16] *Id.*
[17] Moreover, as set forth in paragraph 12 *infra*, the Debtor has already ***admitted*** that the Schedules and Statements of Financial Affairs in this case are inaccurate. Whether these are among the corrections the Debtor should have made to the same is unknown; the Debtor has made no such corrections.

appointment of a trustee . . . if there are reasonable grounds to suspect that current members of the governing body of the debtor . . . participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor . . . ."[18]

**II. Separate from any Allegation of Criminality, a Chapter 11 Trustee Must be Appointed in Light of the Debtor's Mismanagement and Failure to Comply with its Obligations as Debtor in Possession.**

11. These issues, while cause unto themselves for the appointment of a chapter 11 trustee (or otherwise evidence of the best interest of the estate), are buttressed by the wholesale loss of confidence in the Debtor's extant management.[19] Mr. Turner has allowed this case to sit, essentially dormant, for months on end; he did not even care to file monthly operating reports until the eve of the exclusivity deadline, despite admitted knowledge of the obligation to do so. Moreover, when Mr. Turner did finally see fit to stir up docket activity, such was only to belatedly docket operating reports, ask for an extension of exclusivity, and seek retention of a broker who could have been retained months ago.

As counsel to the Debtor correctly noted at the April 15, 2026 status conference, "[the Debtor] ha[d] one monthly operating report due for February," the Debtor would "have another one due shortly, of course," and that quarterly fees were due and "***Mr. Turner is aware of those***."[20] Despite this admitted knowledge, the Debtor did not file ***any*** monthly operating report for ***months*** until June 22, 2026 (the day after the May report was due) and failed to file the May report until June 30, 2026. Moreover, the Debtor filed a putative report covering the period from February 23, 2026 through March 31, 2026, meaning, setting aside the content of such report, there is still no

[18] 11 U.S.C. § 1104(e).
[19] This is all to say nothing of the Debtor's prepetition delays and malfeasance, which Fuse 10 respectfully reserves the right to (and would be all too happy to) supplement in connection with this Motion. In sum, this eve-of-foreclosure-sale case is a paradigmatic bad faith filing.
[20] April 15, 2026 Status Conf. Tr. at 5:21–25 (emphasis added).

properly-filed report for the month of February or the month of March. Expecting correct and timely reports is not pedantry; as one bankruptcy court put it, compliance with monthly reporting requirements is "not a mere technicality, and "habitual non-compliance . . . calls in to question a debtor's ability to effectively reorganize."[21]

12. Moreover, at the same status conference, counsel noted that the Debtor had "some amendments to do to the schedules and statement of financial affairs,"[22] but such amendments have not yet been made. Setting aside whether Mr. Turner's alleged claim should be "disputed" or whether his criminal actions should be included in the Debtor's Statement of Financial Affairs, Fuse 10 and other creditors cannot be certain what information in the Schedules and Statement of Financial Affairs, documents required to be timely and properly completed (under penalty of perjury, no less), is admittedly false. The Debtor, in sum, has completely derogated from its duty to timely and completely comply with its filing and reporting requirements, and its failures have not been excused. This alone provides the requisite cause for the imposition of a fiduciary that will take seriously chapter 11's need for transparency and speed.[23]

## Conclusion

13. At bottom, Mr. Turner's alleged criminality and manifest inaction handily give rise to grounds sufficient to appoint a chapter 11 trustee. Indeed, the alleged criminality and actual failure to comply with chapter 11 reporting requirements may well constitute "cause" under section 1104(a)(1). Here, however, no such analysis be undertaken—and this Honorable Court need not undertake the squeamish process of placing Mr. Turner on the stand and ensuring he is properly Mirandized prior to being asked about the felonies with which he is charged—for the simple reason

[21] *In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012) (citations omitted).
[22] April 15, 2026 Status Conf. Tr. at 5:25–6:2.
[23] *See ,* 7 Collier on Bankruptcy P 1104.02 at note 29c (collecting cases).

that a trustee's appointment is more-than-handily supported by the "flexible" rigors of section 1104(a)(2).

14. This case demands a trustworthy broker at the helm of the Debtor, capable of moving with reasonable dispatch. Mr. Turner is not now, and never has been, that person, and the Court need look no further than the record of this case (including the transcript of the April 15 status conference and the docket entries) to make such a discretionary determination. Yet, from the esteemed local roster of excellent trustees may assuredly be drawn someone up to this task. And, if Mr. Turner is to be believed, the Debtor's $4,691,217.00 in equity,[24] is more-than-ample to properly compensate such a fiduciary for her or his services in this case.

[*Remainder of Page Intentionally Left Blank*]

[24] *See* Monthly Operating Report, ECF No. 24, at § 2(o).

WHEREFORE, Fuse 10, LLC respectfully prays this Honorable Court (i) direct the United States Trustee to appoint a chapter 11 trustee in this case; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: June 30, 2026

By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

-and-

PACK LAW
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500
Joseph A. Pack (*pro hac vice forthcoming*)
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl (*pro hac vice forthcoming*)
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel for Fuse 10, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June, 2026, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig