**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| TURNER DEVELOPMENT, LLC, | ) | Case No.: 26-00077-ELG |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S MOTION (I) FOR ENTRY OF (A) AN ORDER (1) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY, (2) APPROVING THE STALKING HORSE ASSET PURCHASE AGREEMENT AND BID PROTECTIONS, (3) SCHEDULING AN AUCTION AND SALE HEARING, (4) AUTHORIZING THE DEBTOR TO ENTER INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, AND (5) APPROVING THE FORM AND MANNER OF NOTICE AND (B) AN ORDER AUTHORIZING THE SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

Through this motion (the "**Motion**"), Turner Development, LLC, the debtor and debtor in possession (the "**Debtor**"), seeks relief pursuant to sections 105(a), 363(b), 363(f), 363(k), 363(m), and 1107(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004, of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rule 6004-1 (the "**Local Rules**"), including (i) entry of: (a) an order, substantially in the form attached hereto as Exhibit A (the "**Bid Procedures Order**"), (1) approving the notice of bid procedures attached thereto as Attachment 1 (the "**Bid Procedures**"), (2) authorizing the Debtor to enter into and perform its obligations arising prior to closing under the Asset Purchase

Kristen E. Burgers (DC Bar No. 500674)
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8364
Facsimile: (703) 584-8901
Email: kburgers@hirschlerlaw.com

*Counsel for Turner Development, LLC*

Agreement, by and between the Debtor and Fuse 10, LLC, or its designated affiliate ("**Fuse**"), as purchaser (as amended, supplemented, or otherwise modified in accordance with its terms, the "**APA**"),for the sale of the Property (as defined herein), which shall be filed in advance of the scheduled hearing on the Motion, (3) approving the APA as the stalking-horse agreement and approving the Bid Protections provided therein, and (4) scheduling an auction, if necessary, and a hearing to consider approval of the sale; and (ii) following completion of the Court-approved sale process, an order substantially in the form attached hereto as Exhibit B (the "**Sale Order**"), authorizing and approving the sale to the Successful Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code; and (iii) granting related relief. In support of the Motion, the Debtor respectfully states as follows:

## Preliminary Statement

1. The Debtor commenced this chapter 11 case to preserve and maximize the value of its principal asset, certain real property located in Aiken County, South Carolina commonly known as "Weeping Willows" (the "**Property**"). After considering available restructuring alternatives, the Debtor determined, in the exercise of its business judgment, that a sale of the Property pursuant to section 363 of the Bankruptcy Code provides the best opportunity to maximize value for the benefit of the estate.

2. The Debtor and Fuse, the holder of the first-priority mortgage lien against the Property, have agreed to a term sheet, pursuant to which Fuse, or its designated affiliate, has agreed to serve as the stalking horse bidder (the "**Stalking Horse Bidder**") for the Property at a purchase price of $3,000,000.00 (the "**Purchase Price**"), subject to higher or otherwise better offers submitted in accordance with the proposed Bid Procedures and approval by this Court. In

consideration of Fuse's agreement to serve as the Stalking Horse Bidder, Fuse has requested, and the Debtor has agreed, to seek approval of the Bid Protections as set forth herein.

3. Through this Motion, the Debtor seeks approval of the APA, the proposed Bid Procedures, the Bid Protections, and related relief necessary to conduct a fair, competitive, and Court-supervised sale process, after which the Debtor will seek approval of the highest or otherwise best transaction.

**Jurisdiction, Venue, and Statutory Predicates**

4. This Court has jurisdiction over this chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including, without limitation, subsections (A), (M), (N), and (O).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 363(k), and 363(m) of the Bankruptcy Code. The procedural predicates are Bankruptcy Rules 2002 and 6004 and Local Rule 6004-1.

7. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in this chapter 11 case; however, Fuse has filed a Motion to Appoint a Trustee [Docket No. 32].

**Factual Background**

8. On February 23, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code initiating this chapter 11 case.

A. The Property

9. The Debtor is a construction company and owner of multiple parcels of real property located in South Carolina. Of the real property owned by the Debtor, the most valuable are two parcels located at 1001 Old Aiken Road, North Augusta, South Carolina 29841 (Tax Parcel No. 013-12-01-0001, consisting of approximately 175.11 acres (the "**Residential Parcel**") and Tax Parcel No. 013-12-01-0002, consisting of approximately 11.0 acres (the "**Commercial Parcel**" and, together with the Residential Parcel, the "**Property**"). The Property has received the requisite approvals for the construction of a Traditional Neighborhood Development named Weeping Willows, the plan for which contains 342 single-family homes, 107 townhomes, 150 apartments, a mixed-use Town Center, a trail, and sidewalks. In a report dated April 28, 2024, Valbridge Property Advisors appraised the Residential Parcel with an "as is" market value of $9,100,000.00.[1]

**B. The Relationship with Fuse, the Loan, and Foreclosure Action**

10. On February 12, 2021, the Debtor and Fuse entered into a Loan Agreement (as the same was subsequently amended, supplemented, or otherwise modified, the "**Loan Agreement**"), whereby Fuse agreed to extend credit (the "**Loan**") to the Debtor.

11. In connection with the Loan, the Debtor executed and delivered to Fuse a Promissory Note, dated February 12, 2021, in the original principal amount of $1,000,000.00 (the "**First Note**"). Thereafter, on May 20, 2022, the Debtor executed and delivered to Fuse an Amended, Restated, and Increased Promissory Note in the principal amount of $1,176,418.00 (the "**Second Note**" and, together with the First Note, the "**Note**"). The Note is secured by: (a) that certain Mortgage, Security Agreement, and Financing Statement, dated February 12, 2021, and

[1] Fuse disputes the valuation of the Valbridge Property Advisors' appraisal.

recorded on February 22, 2021, in Book 4909 at Page 206 of the records maintained by the Register of Mesne Conveyance for Aiken County, South Carolina (the "**February 2021 Mortgage**"); and (b) that certain Mortgage, Security Agreement, and Financing Statement, dated March 12, 2021, and recorded on March 18, 2021, in Book 4915 at Page 406 of the records maintained by the Register of Mesne Conveyance for Aiken County, South Carolina (the "**March 2021 Mortgage**" and, together with the February 2021 Mortgage, the "**Mortgages**"). The Loan Agreement, Note, Mortgages, and all other documents evidencing the Loan are hereinafter referred to as the "**Loan Documents**."

12. The Debtor defaulted under the Loan Documents. Thereafter, Fuse commenced an action to foreclose its mortgage liens in the Court of Common Pleas for Aiken County, South Carolina, Case No. 2024-CP-02-00667 (the "**Foreclosure Action**"). On November 14, 2025, the Master in Equity entered a Judgment of Foreclosure and Sale (the "**Judgment**"). Among other things, the Judgment adjudicated Fuse's mortgage lien against the Property to be a valid first-priority lien, subject only to ad valorem real property taxes and any liens entitled to statutory priority.

13. W. Melissa Oden and James H.R. Oden, Sr., as Trustees, or their successors in trust, of the W. Melissa Oden Revocable Trust (collectively, "**Oden**"), assert a lien against certain of the Property pursuant to the Judgment entered in the Foreclosure Action. The Debtor disputes the extent to which Oden's asserted lien attaches to the Property and has appealed that aspect of the Judgment. The Debtor provides this disclosure solely for purposes of notice and does not seek through this Motion or the Bid Procedures Order any determination regarding the validity, priority, or extent of Oden's asserted lien. Any such issues are expressly reserved for determination in connection with the Sale Hearing or otherwise as may be appropriate.

14. The Master in Equity scheduled the foreclosure sale of the Property for March 2, 2026. On February 23, 2026, before the foreclosure sale could occur, the Debtor commenced this chapter 11 case, and the automatic stay imposed by section 362(a) of the Bankruptcy Code prevented the foreclosure sale from proceeding.

15. Fuse asserts that the balance due to Fuse by the Debtor under the Loan Documents as of August 26, 2026 was $1,967,989.37, with interest thereafter accruing at the contractual rate of $655.87 per day, together with all subsequently accruing interest, protective advances, attorneys' fees, costs, expenses, and other amounts recoverable under the Loan Documents, and applicable law (as adjusted from time to time, the "**Claim Amount**")[2]. The Claim Amount is calculated as follows:

| Category | Amount |
|---|---|
| Judgment amount as of October 21, 2025 | $1,496,198.45 |
| Post-judgment interest, October 22, 2025 through August 26, 2026 | $202,663.15 |
| Insurance and real estate-tax advances by Fuse | $26,748.32 |
| Publication of sale | $5,646.87 |
| Legal fees incurred in connection with the Foreclosure Action prior to the Foreclosure Auction Date | $133,964.15 |
| Legal fees incurred after the scheduled Foreclosure Auction Date | $7,768.43 |
| Bankruptcy-related legal fees estimated through Closing | $95,000.00 |
| **Total due as of August 26, 2026** | **$1,967,989.37** |

[2] The Debtor reserves the right to demand proof of Fuse's bankruptcy-related legal fees.

**C. The Proposed Sale Transaction**

16. After considering various restructuring alternatives, the Debtor determined, in the sound exercise of its business judgment, that a sale of the Property pursuant to section 363 of the Bankruptcy Code represents the best available means of maximizing the value of the Property for the benefit of the Debtor's estate and its creditors. To that end, on June 23, 2026, the Debtor filed its Application to Employ Coldwell Banker Commercial Realty to Provide Commercial Real Estate Brokerage Services [Docket No. 26] (the "**Coldwell Banker Application**"). The Coldwell Banker Application is still pending before this Court.

17. Following good-faith, arm's-length negotiations, the Debtor and Fuse agreed to a framework for Fuse to serve as a stalking horse bidder for the Property, which negotiations ultimately resulted in the Parties entering into the APA. Pursuant to the APA, (a) Fuse has agreed to serve as the Stalking Horse Bidder for the Property, (b) the Debtor agreed to provide Fuse with certain bid protections, as more fully described below, (c) the Debtor and Fuse agreed that the APA shall constitute the initial bid for the Property and is expressly subject to higher or otherwise better offers submitted in accordance with the Bid Procedures, approval of any successful sale by this Court, and the satisfaction or waiver of the conditions to closing set forth in the APA; and (d) the Debtor agreed to certain limitations on its ability to extend or modify material deadlines governing the sale process in order to facilitate a timely and expeditious sale.

18. As consideration for Fuse's agreement to serve as the Stalking Horse Bidder and establish the initial purchase price for the Property, the Debtor agreed to provide Fuse with certain bid protections. Specifically, the Debtor has agreed, and the APA provides for: (a) a break-up fee equal to four percent (4%) of the Purchase Price, or $120,000.00 (the "**Break-Up Fee**"); and (b) reimbursement of Fuse's actual, reasonable, and documented out-of-pocket expenses, not to exceed

$35,000.00 (the "**Expense Reimbursement**" and, collectively with the Break-Up Fee, the "**Bid Protections**"), in each case payable only upon the occurrence of the circumstances specified in the APA and the proposed Bid Procedures Order. The APA also contains certain restrictions on the Debtor's solicitation or encouragement of competing transactions prior to entry of the Bid Procedures Order.. The Debtor submits that the Bid Protections are reasonable, customary, and appropriate under the circumstances because they induced Fuse to commit to the APA, establish a meaningful baseline purchase price for the Property, and provide the estate with the benefit of a competitive, Court-supervised sale process.

19. The APA was negotiated in good faith and at arm's length by sophisticated parties represented by experienced counsel. Neither the Debtor nor Fuse engaged in fraud, collusion, or conduct intended to chill bidding or confer an unfair advantage in the proposed sale process. Rather, the APA establishes an initial purchase price for the Property while preserving the opportunity for higher or otherwise better offers through the Court-approved Bid Procedures.

20. Pursuant to section 363(k) of the Bankruptcy Code, Fuse intends to credit bid all or a portion of the Claim Amount toward the purchase price under the APA. As set forth above, Fuse holds a valid, first-priority mortgage lien against the Property by virtue of the Judgment entered in the Foreclosure Action. No party has challenged the validity, priority, or extent of Fuse's liens or asserted grounds to limit or deny Fuse's right to credit bid under section 363(k). Accordingly, the APA contemplates that Fuse may satisfy a portion of the purchase price by credit bid, with any amount of the purchase price exceeding the Claim Amount to be paid in cash at closing, all subject to approval by this Court.

21. As noted above, the Debtor seeks to employ Coldwell Banker Commercial Real Estate (the "**Broker**") to maximize exposure of the Property to the marketplace. The Broker's

qualifications, proposed marketing efforts, and compensation are more fully described in the Coldwell Banker Application.

**Summary of Proposed Sale Terms and Disclosures**

22. Pursuant to Local Bankruptcy Rule 6004-1, the following summary sets forth the material terms of the proposed transaction and sale process, including the disclosures required by that Rule. To the extent any transaction-specific information is not available as of the filing of this Motion, the Debtor will provide such information by supplemental filing or notice sufficiently in advance of the applicable objection deadline and hearing. Capitalized terms used in this chart but not otherwise defined herein shall have the meanings ascribed to them in the APA, the Bid Procedures, or the Sale Order, as applicable.

| Sale Term | Proposed Treatment / Disclosure |
| --- | --- |
| **Property** | Certain undeveloped real property located in Aiken County, South Carolina, commonly known as 1001 Old Aiken Road, North Augusta, South Carolina 29841, comprised of Tax Parcel No. 013-12-01-0001, consisting of approximately 175.11 acres and Tax Parcel No. 013-12-01-0002, consisting of approximately 11.0 acres, together with all improvements, fixtures, easements, appurtenances, and other rights appurtenant thereto (collectively, the "**Property**"). A complete legal description of the Property shall be attached as an exhibit to the APA and is incorporated herein by reference. |
| **Valuation** | Amount: $9,100,000[3]<br><br>As-of date: April 8, 2024<br><br>Basis: Appraisal by Valbridge Property Advisors |
| **Stalking Horse Bidder** | Fuse 10, LLC, or its designated affiliate. The Stalking Horse Bidder is not an insider of the Debtor and, to the Debtor's knowledge, has no relationship with the Debtor, its insiders, or any other party in interest that would require disclosure under Local Bankruptcy Rule 6004-1, other than as described herein. |

[3] Fuse disputes the valuation of the Valbridge Property Advisors' appraisal.

| Sale Term | Proposed Treatment / Disclosure |
|---|---|
| **Purchase Price** | $3,000,000.00, payable by a credit bid of all or a portion of the Claim Amount pursuant to section 363(k) of the Bankruptcy Code, with the balance of the purchase price, if any, to be paid in cash at closing in accordance with the APA. |
| **Bid Protections** | Break-Up Fee: Four percent (4%) of the purchase price ($120,000.00).<br><br>Expense Reimbursement: Reimbursement of Fuse's actual, reasonable, and documented out-of-pocket expenses, not to exceed $35,000.00.<br><br>Certain limitations on the Debtor’s solicitation or encouragement of competing acquisition proposals, subject to the terms and conditions of the APA.<br><br>Payment Conditions: The Bid Protections are payable only upon the occurrence of the conditions specified in the APA and the Bid Procedures Order. |
| **Minimum Initial Overbid** | The initial overbid must exceed the Purchase Price by an amount sufficient to account for the Bid Protections (including full credit for the Expense Reimbursement), plus a minimum incremental overbid of $45,000 for a total minimum initial overbid of $3,200,000.00. Thereafter, at the Auction (if any) overbids shall be submitted in minimum increments of $50,000.00, or such other amount as the Debtor may determine, in the exercise of its business judgment and after consultation with its secured creditors to maximize value for the estate. |
| **Marketing and Broker** | Proposed Broker: Coldwell Banker Commercial Realty (the “Broker”).<br><br>Proposed Compensation: A commission equal to six percent (6%) of the gross sale price; provided, however, that if the Property is sold to Fuse through a credit bid, the Broker will receive a flat fee of $100,000.00, in each case subject to Court approval.<br><br>The Debtor’s application to employ the Broker and approve its proposed compensation is scheduled to be heard contemporaneously with this Motion. |
| **Credit Bid** | Pursuant to section 363(k) of the Bankruptcy Code, Fuse may credit bid all or a portion of the Claim Amount toward the Purchase Price in accordance with the APA. The Debtor seeks authority to permit such credit Bid, and Fuse's right to credit bid shall be preserved absent a separate motion and a determination by the Court, after notice and a hearing, that cause exists to limit or deny that right under section 363(k). |
| **Liens, Claims, Interests, and Encumbrances** | The Debtor seeks authority to sell the Property free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code. Upon closing, all valid liens, claims, interests, and encumbrances shall attach to the proceeds of the sale, with the same validity, priority, and extent as existed immediately prior to the sale, subject to all rights, |

| Sale Term | Proposed Treatment / Disclosure |
| --- | --- |
| | claims, defenses, objections, and further order of the Court. The Debtor will identify the applicable subsection or subsections of section 363(f) with respect to each such interest in connection with the proposed Sale Order. |
| **Schedule** | Bid Procedures / Broker-Retention Hearing: September 9, 2026<br><br>Bid Deadline: December 8, 2026 at 6:00 p.m. (prevailing Eastern Time)<br><br>Notification of Qualified Bidders: December 9, 2026 at 6:00 p.m. (prevailing Eastern Time)<br><br>Auction (if any): December 15, 2026 at 1:00 p.m. (prevailing Eastern Time) in person at a location to be determined or by videoconference<br><br>Notice of Successful Bidder: As soon as practicable following the Bid Deadline if the Debtor does not receive any Qualified Bids or following the Auction (if any), but in no event later than December 16, 2026 at 6:00 p.m. (prevailing Eastern Time)<br><br>Sale Objection Deadline: Seven days prior to the Sale Hearing<br><br>Sale Hearing: As soon as reasonably practical after the Auction, consistent with the Court's availability and schedule, but in no event later than January 7, 2027.<br><br>Outside Closing Date: within five (5) Business Days following the entry of the Sale Order, unless otherwise agreed to by the Debtor, Successful Bidder, and Fuse. |
| **Deposits** | Qualified Bid Deposit: Each Qualified Bidder (other than the Stalking Horse Bidder) shall submit, together with its Qualified Bid, a good-faith deposit equal to ten percent (10%) of the amount of the Purchase Price set forth in its Qualified Bid.<br><br>Additional Deposit: Within three (3) business days following the conclusion of the Auction, the Successful Bidder and the Backup Bidder (other than the Stalking Horse Bidder) shall increase their respective deposits so that each deposit equals ten percent (10%) of its final bid as determined at the Auction. The Stalking Horse Bidder shall not be required to post any deposit in connection with its credit bid under section 363(k) of the Bankruptcy Code. |
| **Fees, Costs, and Tax Consequences to the Estate** | Estimated Fees and Costs of Sale: Broker compensation as described above under "Marketing and Broker." Other than customary closing costs payable by the Debtor under the APA, no material additional costs of sale are presently anticipated.<br><br>Other Estimated Costs of Sale: None presently anticipated, other than ordinary closing costs payable by the Debtor under the APA.<br><br>Estimated or Possible Tax Consequences to the Estate: None presently |

| Sale Term | Proposed Treatment / Disclosure |
|---|---|
| | anticipated.<br><br>Proposed Payment of Estate Tax Liability: Any transfer or other taxes allocated to the Debtor shall be paid from the proceeds of sale. |

**<u>Relief Requested</u>**

23. By this Motion, the Debtor seeks entry of the Bid Procedures Order, substantially in the form attached hereto as <u>Exhibit A</u>, which, among other things:

a. approves the Bid Procedures, which are incorporated in the Notice of Bid Procedures attached thereto as Attachment 1;

b. authorizes the Debtor to enter into and perform its obligations under the Asset Purchase Agreement pending consummation of the sale;

c. approves Fuse 10, LLC, or its designated affiliate, as the Stalking Horse Bidder and approves the Bid Protections;

d. schedules the Bid Deadline, Auction (if necessary), Sale Objection Deadline, and Sale Hearing; and

e. grants such other and further relief as the Court deems just and proper.

24. The Debtor further seeks entry of the Sale Order, substantially in the form attached hereto as <u>Exhibit B</u>, which, among other things:

a. authorizes the sale of the Property to the Successful Bidder (or, if applicable, the Backup Bidder) pursuant to the terms of the approved Bid Procedures and the Asset Purchase Agreement;

b. authorizes the sale of the Property free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with such liens, claims, interests, and encumbrances attaching to the proceeds of the sale in the same validity,

priority, and extent as existed immediately prior to the sale, subject to all rights, claims, defenses, objections, and further order of the Court; and

c. grants such other and further relief as the Court deems just and proper.

**Basis for Relief**

25. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate [. . .]." Courts generally authorize pre-confirmation sales of assets outside the ordinary course of business upon the articulation of a valid business justification. See, e.g., In re MCS Global Incorporated, 562 B.R. 648, 654 (Bankr. E.D. Va. 2017) (requiring a "sound business purpose"); In re Flour City Bagels, LLC, 557 B.R. 53, 77 (Bankr. W.D.N.Y. 2016) ("good business reason"); Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991) ("articulated business justification"); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) ("good business reason"); In re Lady H Coal Co., Inc., 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996) ("sound business purpose"); WBQ P'ship v. Commonwealth of Va. Dep't of Med. Assistance Serv. (In re WBQ P'ship), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) (adopting "sound business purpose" test).

A. Approval of the Bid Procedures

26. In connection with such sales, bankruptcy courts routinely approve Bid procedures that are fair, reasonable, and designed to promote competitive Bid and maximize value for the benefit of the estate and its creditors. *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp*. (*In re Lionel Corp*.)**,** 722 F.2d 1063, 1070–71 (2d Cir. 1983).

27. Approval of the proposed Bid Procedures at the outset of the sale process is necessary to preserve and maximize the value of the Property and the Debtor's estate. The Claim

Amount continues to accrue interest and other charges, and the Debtor's estate continues to incur administrative expenses. Under these circumstances, it is in the best interest of the Debtor, creditors, and the estate that the Property be marketed through an orderly, transparent, competitive, and expedited sale process designed to maximize value, minimize the costs and delays associated with a prolonged bankruptcy case, and permit the Debtor to promptly consummate a sale that provides the highest or otherwise best value for the Property.

28. To accomplish these objectives, the Debtor has developed the proposed Bid Procedures, incorporated in the Notice of Bid Procedures attached as Attachment 1 to the Bid Procedures Order, to govern the marketing, qualification, Bid, and auction process for the Property. The Bid Procedures establish uniform standards for prospective bidders, the submission and evaluation of Qualified Bids, the conduct of any Auction, and the designation of the Successful Bidder and Backup Bidder. In doing so, they are designed to promote meaningful participation, provide prospective purchasers with a clear and transparent framework for competing to acquire the Property, and facilitate an efficient sale process that maximizes value for the Debtor's estate while preserving the benefits provided by the Stalking Horse Bidder.

29. Under the proposed Bid Procedures, prospective purchasers will be afforded a reasonable opportunity to conduct due diligence and submit bids for the Property. To participate in the sale process, a prospective purchaser must satisfy the qualification requirements set forth in the Bid Procedures, demonstrate its financial ability to consummate the proposed transaction, timely submit a Qualified Bid that complies with the requirements of the Bid Procedures, and deliver the required good-faith deposit. Each Qualified Bid must be accompanied by an executed purchase agreement, together with a copy marked to reflect any proposed modifications to the stalking horse APA, thereby enabling the Debtor and other parties in interest to evaluate competing

bids on a transparent and substantially equivalent basis.

30. The principal milestones of the proposed sale process are set forth below. The Debtor believes the proposed schedule affords prospective purchasers a reasonable opportunity to conduct due diligence and submit Qualified Bids, while ensuring that the sale process proceeds in an orderly and expeditious manner that preserves the value of the Property and minimizes the costs associated with a prolonged chapter 11 case:

a. ***Bid Deadline***: Bids for the Property, including a marked-up form of the stalking horse APA, as well as the deposit and the other requirements for a bid to be considered a Qualified Bid (as defined in the Bid Procedures) must be received by no later than **December 8, 2026 at 6:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

b. ***Notification to Qualified Bidders***. The Debtor will notify Bidders that their Bids have been deemed Qualified Bids no later than **December 9, 2026 at 6:00 p.m. (prevailing Eastern Time**).

c. ***Auction***: The Auction, if necessary, will be held on **December 15, 2026 at 1:00 p.m. (prevailing Eastern Time)**, or at such other time to which the Auction may be adjourned, reconvened or otherwise rescheduled, with notice of any change in the Auction time or date to be provided by sufficient advance notice to all Qualified Bidders. The Auction may take place in person at a location to be determined or by videoconference.

d. ***Notice of Successful Bidder***. The Debtor will file a notice identifying the Successful Bidder and Backup Bidder (if any) as soon as practicable following the Bid Deadline if the Debtor does not receive any Qualified Bids, or following the Auction (if any), but in no event later than **December 16, 2026 at 6:00 p.m. (prevailing Eastern Time)**.

e. ***Sale Objection Deadline***: Objections to the sale must be filed and served no later than **two days before the Sale hearing**.

f. ***Sale Hearing***: As soon as possible after the Auction, consistent with the Court's availability and schedule, but in no event later than **January 7, 2026**.

g. ***Outside Closing Date***. The Outside Closing Date shall be five (5) Business Days following the entry of the Sale Order unless otherwise agreed to by the Debtor, Successful Bidder, and Fuse.

31. The APA contains certain restrictions on the Debtor's ability to unilaterally extend or modify material deadlines governing the sale process, including requirements that the extension of certain deadlines be subject to Fuse's prior written consent, which, as provided in the APA, may be granted or withheld in Fuse's sole discretion. These provisions were specifically negotiated by the Debtor and Fuse to ensure that the sale process proceeds on an expedited basis and without unnecessary delay. Accordingly, the Bid Procedures and the schedule set forth herein are intended to preserve, and not modify or impair, Fuse's rights under the APA with respect to any extension or modification of such deadlines.

32. The proposed sale process is further reinforced by the Outside Closing Date, which reflects the Parties' negotiated agreement that the sale process and Closing should proceed on an expedited basis. The Outside Closing Date establishes a defined deadline for consummation of the transactions contemplated by the APA, thereby promoting the prompt administration of the sale process, minimizing the costs and risks associated with a prolonged chapter 11 case, preserving the value of the Property, and providing certainty to all parties participating in the sale process. The expedited Closing timeline and related provisions of the APA were specifically negotiated by the Debtor, Buyer, and Fuse to minimize conditions or other impediments that could delay Closing and to facilitate the prompt consummation of the Sale.

33. The Debtor believes the proposed Bid Procedures represent a sound exercise of its business judgment and are fair, reasonable, and appropriate under the circumstances of this chapter 11 case. The Bid Procedures were developed in consultation with Fuse and the Debtor's professionals and are designed to encourage competitive bidding, maximize the value of the Property, and ensure that all interested purchasers are afforded a fair and equal opportunity to participate in the sale process. By establishing objective qualification requirements, clear Bid

procedures, and a structured auction process, the proposed Bid Procedures balance the need for an expeditious sale with the Debtor's fiduciary obligation to maximize value for the benefit of the Debtor's estate.

B. The Auction and Sale

34. If the Debtor receives more than one Qualified Bid by the Bid Deadline, the Debtor will conduct the Auction in accordance with the proposed Bid Procedures. At the Auction, Qualified Bidders will be afforded a full and fair opportunity to submit successive overbids, and the Debtor, in consultation with the secured lenders, will determine the highest or otherwise best Qualified Bid based upon the totality of the circumstances, including the purchase price, certainty of closing, timing, contingencies, and such other factors as are set forth in the Bid Procedures. Following the conclusion of the Auction, and in accordance with the schedule set forth above, the Debtor will designate the Successful Bidder and the Backup Bidder. If no Qualified Bid other than the Stalking Horse Bid is timely received, no Auction will be conducted, and the Debtor will seek approval of the sale contemplated by the APA at the Sale Hearing.

**(1) The Debtor's Decision to Enter into the APA and Designate Fuse as the Stalking Horse Bidder Represents a Sound Exercise of Business Judgment.**

35. Approval of the APA as the stalking horse agreement represents a sound exercise of the Debtor's business judgment. The APA was negotiated in good faith and at arm's length, establishes a binding stalking horse bid that provides a meaningful floor for the sale process, preserves the Debtor's ability to market the Property and accept higher or otherwise better offers in accordance with the Bid Procedures, and remains subject to final approval by this Court. Under these circumstances, the Debtor submits that the APA appropriately advances the Debtor's fiduciary duty to maximize value while providing a fair and orderly framework for the sale process.

36. The Debtor seeks authority to enter into and perform its obligations under the APA pending consummation of the sale, including conducting the marketing and sale process contemplated by the Bid Procedures, providing diligence access to prospective purchasers, and performing its other pre-closing obligations under the APA. Approval of the APA at this stage will not authorize consummation of the sale or otherwise bind the estate to complete the transaction. Rather, any sale of the Property will remain subject to competitive Bid in accordance with the Bid Procedures, entry of the Sale Order, and satisfaction or waiver of the applicable conditions to closing set forth in the APA.

**(2) The Bid Protections Are Reasonable and Should Be Approved.**

37. Bankruptcy courts routinely approve reasonable bid protections where they are necessary to induce a stalking horse bidder to establish a meaningful opening bid, facilitate a competitive sale process, and enhance the value realized by the estate. In determining whether to approve such protections, courts generally consider whether they were negotiated in good faith and at arm's length, whether they encourage rather than chill competitive Bid, and whether they are reasonable in relation to the proposed transaction. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535–37 (3d Cir. 1999.

38. The Bid Protections proposed here are customary and appropriately tailored to the circumstances of this case. The Break-Up Fee equals four percent (4%) of the $3,000,000.00 Purchase Price, and the Expense Reimbursement is capped at $35,000.00 and limited to Fuse’s actual, reasonable, and documented out-of-pocket expenses. The Bid Protections were negotiated in good faith and at arm’s length as part of the overall economic agreement reflected in the APA and were a material inducement to Fuse’s willingness to commit to the transaction, establish the

initial purchase price for the Property, and serve as the Stalking Horse Bidder. The Break-Up Fee herein is well within the spectrum of fees approved by bankruptcy courts in chapter 11 cases. *See, e.g., In re Global Motorsport Group, Inc., et al.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 14, 2008) (Court approved a break-up fee of approximately 4%, or $500,000 in connection with sale); *In re FoxMeyer Corp. et al.*, Case No. 96-1329 (HSB) through 96-1334 (HSB) (Bankr. D. Del., Oct. 9, 1996) (Court approved break-up fee of 7.47% in connection with sale of substantially all of Debtor's assets); *In re Edison Bros. Stores. Inc. et al.*, Case No. 95-1354 (PJW) (Bankr. D. Del., Dec. 29, 1995) (Court approved termination fee of 3.5%).

39. The Bid Protections are structured to preserve meaningful competition rather than discourage it. The initial opening bid of $3,200,000 must exceed the Purchase Price by an amount sufficient to account for the Bid Protections (including full credit for the Expense Reimbursement) and provide at least $45,000.00 in additional value to the estate. Thus, even after giving effect to the Bid Protections, any successful competing bid will provide a material incremental benefit to the estate. Under these circumstances, the Debtor submits that approval of the Bid Protections represents a sound exercise of its business judgment and is in the best interests of the estate and its creditors.

**(3) Fuse Is Entitled to Credit Bid Pursuant to Section 363(k).**

40. Section 363(k) of the Bankruptcy Code provides that, unless the Court for cause orders otherwise, the holder of an allowed claim secured by property that is to be sold under section 363(b) may bid at such sale and, if successful, offset its claim against the purchase price of the property. 11 U.S.C. § 363(k). Credit Bid protects secured creditors against the risk that their collateral will be sold for less than its true value while encouraging competitive Bid and promoting a robust sale process.

41. Fuse holds the first-priority mortgage lien against the Property pursuant to the Judgment entered in the Foreclosure Action. Nothing before the Court constitutes, or should be construed as, a request to limit or condition Fuse's rights under section 363(k), and no party has asserted cause to do so. Accordingly, the Debtor requests that the Bid Procedures Order expressly preserve Fuse's right to credit bid all or any portion of its allowed secured claim in accordance with section 363(k) and applicable law.

**(4) The Property May Be Sold Free and Clear of Liens, Claims, Interests, and Encumbrances Pursuant to Section 363(f).**

42. Section 363(f) of the Bankruptcy Code authorizes the sale of property free and clear of any interest in such property if any one of the conditions set forth in subsections (1) through (5) is satisfied. 11 U.S.C. § 363(f). The Bankruptcy Code permits a sale free and clear where, among other things, applicable nonbankruptcy law permits such a sale, the holder of the interest consents, the interest is a lien and the sale price exceeds the aggregate value of all liens on the property, the interest is the subject of a bona fide dispute, or the holder of the interest could be compelled to accept a money satisfaction of its interest.

43. The Debtor submits that the requested sale satisfies one or more of the requirements of section 363(f) with respect to each lien, claim, interest, and encumbrance asserted against the Property. Pursuant to the Sale Order, any valid liens, claims, interests, and encumbrances will attach to the proceeds of the sale with the same validity, priority, and extent that they had immediately prior to the closing of the sale, subject to all rights, claims, defenses, objections, and further order of the Court. Accordingly, the requested free-and-clear relief will preserve the rights of all interested parties while facilitating the prompt and orderly consummation of the sale.

**(5) The APA Was Negotiated in Good Faith and at Arm's Length.**

44. Section 363(m) of the Bankruptcy Code protects a purchaser that acquires property in good faith from the effects of reversal or modification of a sale order on appeal, unless the sale is stayed pending appeal. Whether a purchaser has acted in good faith depends upon the integrity of its conduct during the course of the sale proceedings and the absence of fraud, collusion, or an attempt to obtain an unfair advantage over other bidders.

45. As set forth above, the APA was negotiated by the Debtor and Fuse in good faith and at arm's length following extensive negotiations. There is no evidence of fraud, collusion, or any attempt by Fuse to control the sale process or discourage competitive Bid. To the contrary, the APA expressly contemplates a competitive sale process under the Court-approved Bid Procedures and preserves the Debtor's ability to solicit, receive, and accept higher or otherwise better offers. Accordingly, the Debtor respectfully submits that, if Fuse is ultimately determined to be the Successful Bidder, the Court should find that Fuse is a good faith purchaser entitled to the protections afforded by section 363(m) of the Bankruptcy Code.

**(6) The Form and Manner of Notice Should Be Approved.**

46. Bankruptcy Rules 2002 and 6004 and Local Bankruptcy Rules 2002-1, 6004-1, and 9013-1 require notice of the proposed Bid procedures, auction, and sale hearing to parties in interest. The Debtor submits that the proposed Notice of Bid Procedures is reasonably calculated to provide timely and adequate notice of the proposed sale process, the Bid Deadline, the Auction (if necessary), the Sale Hearing, and the procedures for objecting to the requested relief. Accordingly, the Debtor respectfully requests approval of the form and manner of the proposed notices.

**(7) The Requested Scheduling Relief Is Appropriate.**

47. The proposed schedule provides sufficient time for interested parties to conduct diligence, submit competing bids, object to the requested relief, and participate in the Auction and Sale Hearing, while recognizing the need to market and sell the Property on an expeditious basis. The Debtor submits that the proposed scheduling deadlines appropriately balance the interests of the estate, Fuse, potential bidders, and other parties in interest and are consistent with the objective of maximizing the value of the Property through an efficient and transparent sale process. Accordingly, the Debtor respectfully requests that the Court approve the proposed scheduling dates set forth in the Bid Procedures Order.

**Notice**

48. The Debtor will serve this Motion in accordance with Bankruptcy Rules 2002, 6004, and 9014 and Local Bankruptcy Rules 6004-1 and 9013-1 on the Office of the United States Trustee, Fuse, all known holders of liens, claims, interests, and encumbrances against the Property, applicable taxing and governmental authorities, all parties requesting notice in this case, and all other parties entitled to notice (collectively, the "**Notice Parties**").

49. Following entry of the Bid Procedures Order, the Debtor will serve the Notice of Bid Procedures attached thereto as Attachment 1 on the Notice Parties in accordance with the Bid Procedures Order and applicable law. The Debtor submits that the proposed Notice of Bid Procedures is reasonably calculated to apprise all interested parties of the proposed sale, the material terms of the sale process, and the applicable deadlines for objecting to the requested relief, and therefore satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and due process.

50. The Notice of Bid Procedures identifies the Property, the Stalking Horse Bidder, the material terms of the proposed sale process, the procedures for obtaining copies of the APA, the applicable deadlines, and the date, time, and location of the Sale Hearing. The Debtor submits that the proposed notice is reasonably calculated to apprise interested parties of the relief requested and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

51. Pursuant to the schedule set forth above, the Debtor will file and serve a notice identifying the Successful Bidder, any Backup Bidder, the purchase price, and any other material information required by the Bid Procedures Order. The Debtor submits that the proposed notice procedures provide timely and adequate notice to all interested parties

**Waiver of the Stay Imposed by Bankruptcy Rule 6004(h)**

52. The Debtor further requests that the Court waive the fourteen (14)-day stay otherwise imposed by Bankruptcy Rule 6004(h) with respect to the Sale Order. Cause exists to grant such relief. As set forth herein, the Property has been the subject of prepetition foreclosure proceedings, the obligations secured by the Property continue to accrue interest and other charges, and the bankruptcy estate continues to incur administrative expenses. The proposed sale process has been structured to proceed on an expedited basis in order to preserve and maximize the value of the Property while minimizing the costs associated with a prolonged chapter 11 case. Imposition of the fourteen-day stay would unnecessarily delay the Closing, increase costs to the bankruptcy estate, and jeopardize the benefits of the sale process approved by the Court.

53. Accordingly, the Debtor respectfully requests that the Sale Order provide that it shall be effective immediately upon its entry and that the stay imposed by Bankruptcy Rule 6004(h) be expressly waived.

## Conclusion

**WHEREFORE**, the Debtor respectfully requests that the Court: (a) enter the Bid Procedures Order, substantially in the form attached hereto as Exhibit A, approving the Bid Procedures, authorizing the Debtor to perform its obligations under the APA pending consummation of the sale, approving the Bid Protections, establishing the procedures and schedule governing the sale process, approving the form and manner of notice, and granting such other and further relief as set forth therein; (b) following the Sale Hearing, enter the Sale Order, substantially in the form attached hereto as Exhibit B, authorizing the sale of the Property to the Successful Bidder (or, if applicable, the Backup Bidder) free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, together with such other and further relief as set forth therein; and (c) grant such other and further relief as the Court deems just and proper.

Dated: September 1, 2026

Respectfully submitted,
*/s/ Kristen E. Burgers*

Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Phone: (703) 584-8900
Facsimile: (703) 584-8901
Email: sleach@hirschlerlaw.com
kburgers@hirschlerlaw.com

*Counsel to the Debtor*