**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-00077-ELG |
| TURNER DEVELOPMENT, LLC, | ) | |
| | ) | (Chapter 11) |
| Debtor. | ) | |

**ORDER (I) APPROVING BID PROCEDURES FOR THE SALE OF REAL PROPERTY, (II) APPROVING THE STALKING HORSE ASSET PURCHASE AGREEMENT AND BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND SALE HEARING, (IV) AUTHORIZING THE DEBTOR TO ENTER INTO THE STALKING HORSE ASSET PURCHASE AGREEMENT, (V) APPROVING THE FORM AND MANNER OF NOTICE, AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the Motion (I) for Entry of an Order (1) Approving Bid Procedures for the Sale of Real Property, (2) Approving the Stalking Horse Asset Purchase Agreement and Bid Protections, (3) Scheduling an Auction and Sale Hearing, (4) Authorizing the Debtor to Enter into the Stalking Horse Asset Purchase Agreement, and (5) Approving the Form and Manner of

Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: sleach@hirschlerlaw.com
kburgers@hirschleraw.com

*Counsel to the Debtor*

Notice and (B) An Order Authorizing the Sale of Real Property Free and Clear of Liens, Claims, and Encumbrances; and (III) Granting Related Relief [Docket No. ___] (the "**Motion**"), filed by Turner Development, LLC, the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case; and the Court having held a hearing on the Motion on September 9, 2026; and the Court having determined that (i) the relief sought in the Motion is in the best interest of the Debtor, its estate, creditors, and all parties in interest; and (ii) the legal and factual bases set forth in the Motion and any exhibits and arguments of counsel offered at the hearing on the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY FOUND AND DETERMINED THAT:

A. The Court has jurisdiction to hear and determine the propriety of entering this Order pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding in this district is proper pursuant to 28 U.S.C. § 1409. The Motion and any hearing thereon constitute a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are, *inter alia*, section 105 and 363 of the United States Bankruptcy Code, as supplemented by Federal Rules of Bankruptcy Procedure 2002 and 6004.

B. Pursuant to Bankruptcy Rule 2002(a), proper, timely, adequate, and sufficient notice of, and opportunity to object to, the Motion has been provided to all parties entitled thereto in accordance with the various provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, and all requirements of procedural due process.

C. Capitalized terms which are not otherwise defined in this Order shall have the same meaning as set out in the Motion.

D. Any objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court are overruled except as otherwise expressly set forth herein

E. The Bid Procedures, as set forth in the Sale and Bid Procedures Notice attached hereto as Attachment 1, are reasonable and appropriate under the circumstances of this Chapter 11 case.

F. The Bid Procedures are designed to ensure that the sale process adequately exposes the Property to the market and that the Auction is conducted in a fair, timely and orderly manner.

G. The Sale and Bid Procedures Notice, substantially in the form attached hereto as Attachment 1, provides adequate notice concerning the proposed sale of the Property, as contemplated in the Motion, and provides due and adequate notice of the relief sought in the Motion.

H. The Debtor has demonstrated compelling and sound business justifications for payment of the Break-Up Fee and Expense Reimbursement (as such terms are defined in the Bid Procedures) (together, the "**Bid Protections**"), in accordance with the procedures set forth in the APA.

I. The Debtor and Fuse each negotiated the Bid Protections and the APA in good faith and at arm's-length. The process for the Fuse's selection as the Stalking Horse Bidder was fair and appropriate under the circumstances and is in the best interests of the Debtor's estate.

J. The Debtor has demonstrated a compelling and sound justification for authorizing the payment of the Bid Protections in the event that Fuse is not the Successful Bidder including, without limitation, that:

(a) the Bid Protections are the product of negotiations between the Debtor and Fuse conducted in good faith and at arm's-length, in order to maximize the value of the Debtor's estates;

(b) the Bid Protections are an actual and necessary costs and expenses of preserving the Debtor's estate within the meaning of section 503(b) of the Bankruptcy Code;

(c) the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposed Sale under the APA, the substantial efforts that have been and will be expended by Fuse, notwithstanding that the proposed Sale is subject to higher or better offers, and the substantial benefits Fuse has provided to the Debtor, its estate, its creditors, and all parties in interest, including, among other things, by increasing the likelihood that the best possible price for the Property will be received;

(d) the protections afforded to Fuse by way of the Bid Protections are a material inducement for, and express condition of, Fuse's willingness to enter into the APA, and was necessary to ensure that Fuse would continue to pursue the proposed acquisition on terms acceptable to the Debtor in its sound business judgment, subject to competitive bidding; and

(e) the offer of the Bid Protections are intended to promote more competitive bidding by inducing Fuse's bid, which (a) will serve as a minimum floor bid on which all other bidders can rely with respect to the Property, (b) may prove to be the highest or otherwise best available offer for the Property and (c) increases the likelihood that the final purchase price will reflect the true value of the Property.

K. Entry of this Bid Procedures Order is in the best interest of the Debtor's bankruptcy estate, its creditors and other parties-in-interest.

**ACCORDINGLY, THE COURT HEREBY ORDERS AS FOLLOWS**:

1. The relief requested in the Motion is granted as set forth herein.

2. The Bid Procedures are approved in their entirety and are incorporated into this Bid Procedures Order as if fully set forth herein and shall apply to the proposed auction and sale of the Property.

3. The Debtor is hereby authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures.

4. The Bid Protections are approved. If earned by Fuse pursuant to the terms of the APA, the Debtor is authorized to pay the Bid Protections to Fuse without further order of the Bankruptcy Court.

5. The proposed sale of the Property and the Auction shall be conducted in accordance with the provisions of this Bid Procedures Order and the Bid Procedures.

6. The Sale and Bid Procedures Notice attached hereto as <u>Attachment 1</u> provides proper notice to the applicable parties-in-interest and is hereby approved.

7. The Debtor shall serve the Sale and Bid Procedures Notice within three (3) business days of entry of this Order on the following parties by electronic mail, to the extent available, or by first-class mail otherwise, and/or by such other method reasonably calculated to provide notice to such parties: (a) the Office of the U.S. Trustee; (b) all known secured and unsecured creditors of the Debtor; (c) all entities known to have expressed an interest in bidding on the Property; and (d) all other parties requesting notice in this Chapter 11 case pursuant to Bankruptcy Rule 2002.

8. Any objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and be filed with the Court on or before December __, 2026, provided, however, any objections with respect to the approval or disapproval of the Successful Bid designation or the Back-Up Bid designation, or any terms of the Successful Bid or Backup Bid that differ from the APA, shall be deemed timely made if (but only if) made orally on the record at the Sale Hearing when requested by the Bankruptcy Court.

All such objections shall be served in accordance with the Sale and Bid Procedures Notice so as to actually be received by such date and time.

9. Compliance with the foregoing notice provisions shall constitute sufficient notice of the Debtor's proposed sale of the Property free and clear of all liens, claims, interests and encumbrances, and no additional notice of such contemplated transactions need be given.

10. If the Debtor receives more than one Qualified Bid (as defined in the Bid Procedures), an Auction shall be held on December 15, 2026, commencing at 1:00 p.m. (prevailing Eastern time) virtually (with a videoconference link to be provided by Debtor's counsel) or in person at the offices of Hirschler Fleischer, 1676 International Drive, Suite 1350, Tysons, Virginia 22102, or at any such other location as the Debtor may hereafter designate. Each bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to bidding or the sale. The Debtor shall cause the auction to be transcribed and/or videotaped.

11. The Debtor is hereby authorized to hold and conduct the Auction in accordance with the Bid Procedures.

12. The Sale Hearing shall be conducted on [__, 2027], at [____ a.m./p.m.]., and may be adjourned from time to time without further notice other than an announcement in open court at the Sale Hearing.

13. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon entry, and no automatic stay of execution shall apply to this Bid Procedures Order.

14. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Bid Procedures Order.

WE ASK FOR THIS:

*/s/ Kristen E. Burgers*
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Email: kburgers@hirschlerlaw.com

*Counsel to the Debtor*

SEEN AND NO OBJECTION:

____________________
Maurice Verstandig (DC Bar No. ____)
The VerStandig Law Firm LLC
1452 W. Horizon Ridge Parkway, #665
Henderson, Nevada 89012

*Counsel to Fuse 10, LLC*

SEEN AND NO OBJECTION:

____________________
Katharine Toledo, Esq.
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, Virginia 22314

SEEN AND NO OBJECTION:

____________________

Douglas Broeker
Sweetapple, Broeker & Varkas, P. L.
12700 Biscayne Boulevard, Suite 402
North Miami, Florida 33181

*Counsel to Melissa Oden and Arthur Anselmo*

Copies to:

Stephen E. Leach, Esq.
Kristen E. Burgers, Esq.
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102

Maurice Verstandig
The VerStandig Law Firm LLC
1452 W. Horizon Ridge Parkway, #665
Henderson, Nevada 89012

Katharine Toledo
Office of the United States Trustee
1725 Duke Street, Suite 650
Alexandria, Virginia 22314

Douglas Broeker
Sweetapple, Broeker & Varkas, P. L.
12700 Biscayne Boulevard, Suite 402
North Miami, Florida 33181

All attorneys who have entered an appearance and who are registered e-filers

All entities on the Court's mailing list

ATTACHMENT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | |
| TURNER DEVELOPMENT, LLC, | Case No. 26-00077-ELG |
| Debtor. | (Chapter 11) |

**NOTICE OF BID PROCEDURES, AUCTION DATE,**
**AND SALE HEARING**

**NOTICE IS HEREBY GIVEN**, as follows:

1. On September 1, 2026, Turner Development, LLC, the debtor and debtor-in-possession herein (the "**Debtor**"), filed a motion ("**Bid Procedures Motion**") requesting entry of an order: (a) approving bid procedures for the sale of substantially all the Debtor's Property (as defined below); (b) authorizing and scheduling an auction (the "**Auction**") to sell the Property; (c) scheduling a hearing (the "**Sale Hearing**") on approval of the sale of the Debtor's Property free and clear of liens, claims, encumbrances and other interests; (d) authorizing the assumption and assignment of certain executory contracts in conjunction with the sale; (e) approving certain deadlines and the form, manner, and sufficiency of notice of the foregoing; and (f) granting other related relief [Docket No. __].

The asset to be sold is certain undeveloped real property located in Aiken County, South Carolina, commonly known as 1001 Old Aiken Road, North Augusta, South Carolina 29841, comprised of Tax Parcel No. 013-12-01-0001, consisting of approximately 175.11 acres and Tax Parcel No. 013-12-01-0002, consisting of approximately 11.0 acres, together with all improvements, fixtures, easements, appurtenances, and other rights appurtenant thereto (collectively, the "**Property**"). A description of the Property (including a complete legal description) is attached hereto as Exhibit A and is incorporated herein by reference.

2. On September __, 2026, the Court entered an order granting the Bid Procedures Motion and approving the Bid Procedures (the "**Bid Procedures Order**") [Docket No. __]. This Notice is issued pursuant to the requirements of the Bid Procedures Order. Each capitalized term in the Notice shall have the meaning ascribed to such term in the Bid Procedures.

---

Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: sleach@hirschlerlaw.com
kburgers@hirschleraw.com

*Counsel to the Debtor*

3. The Debtor has entered into an Asset Purchase Agreement (the "**APA**") with Fuse 10, LLC, or its designated affiliate ("**Fuse**") dated September __, 2026. Fuse is a secured creditor of the Debtor, with a first priority security interest in the Property. Pursuant to the APA, the Debtor intends to sell the Property to Fuse for $3,000,000, which amount shall include a credit bid component in an amount up to the amount of Fuse's allowed secured claim. Fuse asserts that the balance due to Fuse by the Debtor under the Loan Documents as of August 26, 2026 was $1,967,989.37, with per diem interest accruing at the rate of $655.87. The sale of the Property will be subject to higher and better offers as set forth in the Bid Procedures. Pursuant to the Bid Procedures Order and as set forth herein, the Property will be sold following an Auction (if more than one Qualified Bid is received) and will be sold free and clear of all liens, claims, encumbrances and other interests. The Debtor's ability to close the contemplated transaction is subject to approval of the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**").

4. The Bid Procedures provide for the following key dates in connection with the proposed sale of the Property:

| **Event** | **Date** |
|---|---|
| Deadline to submit Qualified Bids | December 8, 2026 at 6:00 p.m.[1] |
| Notification to Qualified Bidders | December 9, 2026 at 6:00 p.m. |
| Auction | December 15, 2026 at 1:00 p.m. |
| Notice of Successful Bidder | December 16, 2026 at 6:00 p.m. |
| Deadline to Object to Auction Process or Results | [Two days before the Sale Hearing] |
| Sale Hearing | [December __, 2026/January _, 2027, at ____ a.m./p.m.] |
| Outside Closing Date for the Sale of the Property | [Five Business Days after entry of the Sale Order] |

THESE DATES ARE SUBJECT TO CHANGE BY THE DEBTOR OR THE BANKRUPTCY COURT. ALL PARTIES ARE ENCOURAGED TO CHECK THE BANKRUPTCY COURT DOCKET FOR CHANGES TO THESE DATES.

5. The Bid Procedures are attached hereto as <u>Exhibit B</u>.

6. Copies of the Bid Procedures Motion, the Bid Procedures Order, and the APA are available for review at the Office of the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, E. Barrett Prettyman U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001, or upon request made to the undersigned counsel.

[1] All times are prevailing Eastern Time.

7. Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a copy to Kristen E. Burgers, Esquire, Hirschler, 1676 International Drive, Suite 1350, Tysons, Virginia 22102, counsel for the Debtor. All objections must be received by December __, 2026, the deadline set by the Court.

8. The Debtor has retained Coldwell Banker Commercial Realty Services ("**Coldwell Banker**") as its commercial real estate broker to market and sell the Property. Coldwell Banker has established a data room with available documentation for the Property. Interested parties may access the data room upon execution of a Non-Disclosure Agreement to be provided by Coldwell Banker. All requests for information concerning the Property should be directed to Patrick Register at Coldwell Banker Commercial Realty Services (Patrick@cbcnrt.com).

9. All other inquiries, including requests for copies of the Bid Procedures Motion, Bid Procedures Order, or APA should be directed to counsel for the Debtor, Kristen E. Burgers, Esquire, Hirschler, 1676 International Drive, Suite 1350, Tysons, Virginia 22102 (kburgers@hirschlerlaw.com).

Dated: September __, 2026

Respectfully submitted,

*/s/* ______________________________

Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Phone: (703) 584-8900
Email: kburgers@hirschlerlaw.com

*Counsel to the Debtor*

# EXHIBIT A

## PROPERTY DESCRIPTION

For purposes of this Agreement, the term "***Property***" means and includes all of Seller's right, title, and interest in and to the following, whether now owned or hereafter acquired prior to the Closing:

1. The real property described below, together with all buildings, structures, fixtures, and other improvements located thereon;

2. All easements, rights-of-way, privileges, hereditaments, appurtenances, strips, gores, rights, and interests in adjoining streets, roads, alleys, and rights-of-way benefiting or appurtenant to the real property;

3. All development rights, density rights, air rights, water rights, utility capacity rights, access rights, ingress and egress rights, riparian rights (if any), and all other rights and interests appurtenant to or benefiting the real property;

4. All zoning rights, land use rights, governmental approvals, permits, licenses, entitlements, vested rights, site plan approvals, subdivision approvals, development agreements, and similar rights relating exclusively to the ownership, operation, use, or development of the real property, to the extent transferable;

5. All surveys, plats, engineering reports, environmental reports, geotechnical reports, traffic studies, architectural plans, site plans, construction drawings, specifications, development studies, and other books, records, files, and materials in Seller's possession or control relating exclusively to the ownership, operation, use, or development of the real property, to the extent assignable;

6. All warranties, guaranties, indemnities, claims, causes of action, and rights against third parties relating exclusively to the ownership, operation, condition, construction, or development of the real property, to the extent assignable;

7. All other rights, privileges, interests, and appurtenances owned by Seller and used exclusively in connection with, or appurtenant to, the ownership, operation, or development of the real property.

**Street Address**
1001 Old Aiken Road
North Augusta, South Carolina 29841
**Tax Map / Parcel Numbers**
013-12-01-001
013-12-01-002
**Legal Description**

## PARCEL I

ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 195.30 Acres, more or less, comprised of the "Farm Tract" and the "Home Tract" on a plat prepared by John M. Bailey & Associates, PC, dated September 27, 2010, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 57, Page 887; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 10.83 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 60; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 11.00 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Tax Map and Parcel Number 013-12-01-001

Being the same property conveyed from Haskell Family Properties, LLC to Turner Development, LLC by that certain Title to Real Estate dated February 12, 2021, and recorded February 22, 2021, in Book 4909, Page 202, aforesaid records.

## PARCEL II

ALL that lot or parcel of land, with improvements thereon, situate, lying and being approximately One (1) mile West of Clearwater, in the State of South Carolina, County of Aiken, being shown and designated as consisting of 11.00 acres, more or less, on a plat recorded in the R.M.C. for Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Said property is conveyed subject to and with notice of the following matters: (a) drainage easements, building setback lines, and all other matters on the plat of record; and (b) general utility easements and road right-of-way grants and easements.

Said property is conveyed subject to any and all other easements and restrictions of record in the aforesaid Clerk's office.

Tax Map and Parcel Number 013-12-01-002

Being the same property conveyed from Mark Allen Richards to Turner Development, LLC by that certain Title to Real Estate dated March 12, 2021, and recorded March 18, 2021, in Book 4915, Page 402.

# **EXHIBIT B**

## **BID PROCEDURES**

1. These bid procedures (the "**Bid Procedures**") shall govern the process by which Turner Development, LLC, the debtor and debtor in possession herein (the "**Debtor**"), shall sell certain undeveloped real property located in Aiken County, South Carolina, commonly known as 1001 Old Aiken Road, North Augusta, South Carolina 29841, comprised of Tax Parcel No. 013-12-01-0001, consisting of approximately 175.11 acres and Tax Parcel No. 013-12-01-0002, consisting of approximately 11.0 acres, together with all improvements, fixtures, easements, appurtenances, and other rights appurtenant thereto (collectively, the "**Property**"). A description of the Property (including a complete legal description) is attached as Exhibit A to the Notice of Bid Procedures, Auction Date, and Sale Hearing (the "**Notice**") and is incorporated herein by reference.

2. On September __, 2026, the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**") entered its order (the "**Bid Procedures Order**") (I) Approving Bid Procedures for the Sale of Real Property, (II) Approving the Stalking Horse Asset Purchase Agreement and Bid Protections, (III) Scheduling an Auction and Sale Hearing, (IV) Authorizing the Debtor to Enter into the Stalking Horse Asset Purchase Agreement, (V) Approving the Form and Manner of Notice, and (F) Granting Related Relief [Docket No. __].

3. Interested parties requesting information about these Bid Procedures, the qualification process or due diligence should contact the Debtor's counsel as follows:

Kristen E. Burgers
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: kburgers@hirschlerlaw.com

4. The Debtor shall consult with its counsel, as well as with counsel for its senior secured lender, Fuse 10, LLC ("**Fuse**") and counsel for W. Melissa Oden and James H.R. Oden, Sr., as Trustees, or their successors in trust, of the W. Melissa Oden Revocable Trust (collectively, "**Oden**" and together with Fuse, the "**Major Stakeholders**") on appropriate matters, including, without limitation, (i) determining whether a potential bidder is a Qualified Bidder; (ii) negotiating one or more agreement(s) with one or more Qualified Bidder(s); (iii) the auction of the Property pursuant to these Bid Procedures (the "**Auction**"), (iv) selecting the Successful Bidder and Backup Bidder at the Auction; and (v) modifying or amending the Bid Procedures.

**SALE TERMS**

5. These Bid Procedures shall govern the sale of the Property. The Property is comprised of two tax parcels (Tax Parcel No. 013-12-01-0001 and Tax Parcel No. 013-12-01-0002). Purchasers must bid on both parcels. Multiple purchasers may submit joint bids for both parcels, provided that all other terms as set forth herein are satisfied.

6. The sale of the Property shall be on an "as is," "where is," and "with all faults" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents, or estate except as may be agreed by the Debtor subject to the approval of the Bankruptcy Court.

7. Subject to the Bankruptcy Court's approval, all of the Debtor's right, title and interest in and to the Property shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**") subject to and in accordance with Sections 363 and 1107 of the Bankruptcy Code, with such Interests to attach in the same amount, nature, extent and priority to the proceeds of the sale of the Property.

**DUE DILIGENCE**

8. Prior to the Auction, the Debtor shall afford any potential bidder the opportunity to conduct reasonable due diligence review. The Debtor shall provide all potential bidders certain information in connection with the proposed sale, including, but not limited to, these proposed Bid Procedures and a copy of the Asset Purchase Agreement ("**APA**") executed by Fuse 10, LLC (the "**Purchaser**" or "**Stalking Horse**").

9. The Debtor has retained Coldwell Banker Commercial Realty Services ("**Coldwell Banker**") as its commercial real estate broker to market and sell the Property. Coldwell Banker has established a data room with all documentation for the Property which is currently in the Debtor's possession or control. Interested parties may access the data room upon execution of a Non-Disclosure Agreement to be provided by Coldwell Banker. All requests for information concerning the Property should be directed to Patrick Register at Coldwell Banker Commercial Realty Services (Patrick@cbcnrt.com).

10. The Debtor shall provide all additional due diligence that is reasonably requested and reasonably available. To the extent the Debtor furnishes any such potential bidder with any due diligence materials that are not already available in the virtual data room, the Debtor shall promptly add such information to the virtual data room for the benefit of all such potential bidders and the Purchaser. The Debtor will provide each potential bidder and the Purchaser with access to the Property for inspection purposes only.

11. The Debtor and its professionals do not represent or warrant the accuracy or veracity of any information that they provide to potential bidders in connection with due diligence; *provided, however,* that the Debtor and its professionals represent and warrant that they have made good faith efforts to ensure that information provided to potential bidders is accurate and complete.

**DETERMINATIONS BY DEBTOR**

12. After consultation with the Major Stakeholders, as appropriate, the Debtor is authorized (i) to determine whether any potential bidder is a Qualified Bidder; (ii) to coordinate the efforts of potential bidders in conducting their respective due diligence investigations; and (iii) to receive bids from Qualified Bidders (collectively, the "**Bidding Process**").

**REQUIREMENTS OF "QUALIFIED BIDDER" STATUS**

13. Any potential bidder desiring to participate in the Bidding Process must be deemed a "Qualified Bidder" by the Debtor. To be deemed a Qualified Bidder, in conjunction with its bid for the Property, such bidder must deliver to the Debtor, its professionals, and Coldwell Banker:

(i) proof of funds in the amount of $3,200,000;

(ii) a stipulation or evidence that submission of the bid, execution, delivery and closing on the purchase of the Property is duly authorized and the prospective bidder has all requisite approvals from its board of directors or comparable governing body; and

(iv) a certified check or other good and verifiable funds in the amount of ten percent (10%) of the proposed purchase price (the "**Good Faith Deposit**").

For the avoidance of doubt, the Purchaser shall be deemed a Qualified Bidder, and the APA shall be deemed a Qualified Bid as hereinafter defined, notwithstanding the provisions of paragraph 15(d), *infra*, and the Purchaser shall not be required to submit an additional Qualified Bid, a Good Faith Deposit, or any additional information.

14. The Good Faith Deposits shall be held by an escrow agent to be designated by the Debtor. All Good Faith Deposits shall be returned within seventy-two (72) hours of the selection of the Successful Bidder as set forth herein, except for the Good Faith Deposit submitted by the Successful Bidder and the Back-Up Bidder. The Good Faith Deposits of the Successful Bidder and Back-Up Bidder shall be held in separate accounts established by the Debtor or its professionals. If the Successful Bidder (or the Back-Up Bidder) fails to consummate an approved

sale of the Property because of a breach or failure to perform on the part of such Successful Bidder (or Back-Up Bidder), such Successful Bidder's (or Back-Up Bidder's) Good Faith Deposit will be held by the Debtor subject to the terms and conditions in paragraph 24 below.

15. A Qualified Bidder that desires to make a bid for the Property shall deliver written and electronic copies of such bid, along with its qualifications and Good Faith Deposit, to the Debtor and its professionals so as to be received by no later than 6:00 p.m. prevailing Eastern Time on December 8, 2026, (the "**Opening Bid Deadline**").

**REQUIREMENTS FOR A QUALIFIED BID**

16. A "Qualified Bid" is an offer to purchase the Property that conforms, to the Debtor's satisfaction (in consultation with its professionals and Fuse), to the following requirements:

(a) Identity of Offeror. Discloses the identity of the offeror, including without limitation the identity of the equity holders and sponsors of the offeror; *provided*, *however*, that, if the offeror is a publicly traded company, the equity holders of such offeror need not be disclosed.

(b) Form. Includes a clean, duly executed and binding purchase agreement (an "**Agreement**"), together with all exhibits, schedules, and any ancillary agreements described therein and a redline of its proposed purchase agreement compared against the APA.

(c) Purchase Price. Identifies the purchase price.

(d) Minimum Overbid. The purchase price must include a minimum cash amount payable at closing in the amount of at least Three Million Two Hundred Thousand Dollars ($3,200,000.00), which is equal to the bid submitted by the Stalking Horse of $3,000,000.00, plus (i) the break-up fee in the amount of $120,000.00 (the "**Break-Up Fee**"), (ii) Expense Reimbursement subject to a cap of $35,000.00 (the "**Expense** a **Reimbursement**"), and (iii) the initial minimum overbid increment of $45,000.00.

(e) Financing. Includes evidence to the satisfaction of the Debtor, in consultation with the Debtor's professionals and Fuse, of the offeror's financial ability to consummate the transactions contemplated in the Agreement.

(f) Organizational Authority. Includes written evidence to the Debtor's satisfaction, in consultation with the Debtor's professionals and Fuse, of the authorization and approval from the offeror's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of the Agreement.

(g) Closing. Confirms that, if selected as the Successful Bidder, the offeror will consummate and fund the Agreement in accordance with its terms by a date certain.

(h) Due Diligence. Acknowledges and represents that the offeror: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or the Auction other than as provided in the Agreement; and (iii) with the exception of the Purchaser, is not entitled to any breakup fee or similar type of payment, and by submitting an Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code related in any way to the submission of its bid or the Bid Procedures.

(i) Earnest Money Deposit. Includes the Good Faith Deposit.

(j) No Collusion. By submitting a Qualified Bid, each such bidder shall be deemed to have confirmed that it has not engaged in any collusive behavior with respect to the bidding or the Auction. The Debtor reserves the right to have each Qualified Bidder re-confirm that it has not engaged in any collusive behavior with respect to the bidding or the Auction.

17. The Debtor, in its discretion, in consultation with its professionals and Major Stakeholders, may allow a Potential Bidder whose offer has failed to meet the requirements of a Qualified Bid additional time to cure any deficiencies. Between the Opening Bid Deadline and the Auction, the Debtor may negotiate with or seek clarification from Qualified Bidders. Each Qualified Bidder shall promptly provide to the Debtor any information reasonably required in connection with the evaluation of a Qualified Bid. Without the consent of the Debtor, in consultation with its professionals and Major Stakeholders, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except to increase the purchase price or otherwise improve the terms of the Qualified Bid to make them more favorable to the bankruptcy estate during the period that such Qualified Bid is required to remain irrevocable and binding.

**AUCTION**

18. In the event that at least two (2) Qualified Bids (including the APA) are received by the Debtor by the Opening Bid Deadline, the Debtor will conduct an Auction. The Auction, if any, shall be held in person at the law offices of Hirschler, 1676 International Drive, Suite 1350,

Tysons, VA 22101 at 1:00 p.m. (prevailing Eastern Time) or by videoconference on April 8, 2019 The bidding shall start at the amount offered in the highest Qualified Bid as determined by the Debtor.

19. In the event that there are no Qualified Bids submitted by the Bid Deadline other than the APA, the Debtor will file a notice with the Bankruptcy Court cancelling the Auction by 11:59 p.m. on December 15, 2026 and shall request at the Sale Hearing that the Bankruptcy Court approve the APA.

20. Except as otherwise determined by the Debtor in consultation with its professionals and Major Stakeholders, only the (i) Debtor, (ii) the Debtor's professionals, (iii) the Major Stakeholders, (iv) the Office of the United States Trustee for the Fourth Circuit, (v) Qualified Bidders, (vi) any creditor of the Debtor that, at least five (5) business days prior to the Auction, delivers to Debtor's counsel (by mail or e-mail at the address or e-mail address identified hereinabove) a written request to attend the Auction, and (vii) the respective professionals of the foregoing, shall be entitled to attend the Auction; provided that (***x***) the Debtor reserves the right to object to any request to attend the Auction made by a creditor pursuant to clause (v) immediately above, and (***y***) if the Debtor and such creditor are unable to consensually resolve such objection promptly, the Debtor shall seek a teleconference with the Bankruptcy Court prior to the Auction to adjudicate such objection. Only Qualified Bidders (including the Purchaser) are eligible to participate in the Auction.

21. The Auction shall be governed by the following procedures:

a. Qualified Bidders shall appear at the Auction in person, or through a duly authorized representative who has all requisite authority to legally bind such Qualified Bidder.

b. The Debtor, in consultation with its professionals and Major Stakeholders, may conduct the Auction in the manner that the Debtor determines, in its reasonable business judgment, will result in the Successful Bid that will maximize the overall value of the Property to the creditors and the Debtor's estate, and may adopt and modify rules for the Auction at the Auction that, in the Debtor's reasonable business judgment, in consultation with its professionals

and Major Stakeholders, will better promote the goals of the Auction and that are not materially inconsistent with any of the provisions of the Bid Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court. All such rules will provide that: (i) the Auction procedures must be fairly and evenly administered, and not intended to cause any participating Qualified Bidder to be disadvantaged in any material way with respect to the process as compared to any other participating Qualified Bidder; and (ii) all participating Qualified Bidders (or their authorized representatives) shall be entitled to be present for all bidding and that the terms of each Qualified Bid shall be fully disclosed or available to all other Qualified Bidders throughout the entire Auction. Each bid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bid Procedures, shall be deemed to constitute a Qualified Bid.

c. The Debtor will arrange for the actual bidding at the Auction to be recorded by stenographic or video means.

d. No later than one (1) hour prior to the commencement of the Auction, the Debtor, in consultation with its professionals and Major Stakeholders, shall determine (i) the then-current highest or otherwise best bid (the "**Opening Bid**"), and (ii) the initial minimum overbid above the Opening Bid, which shall be in an amount not less than Fifty Thousand Dollars ($50,000.00).

e. The Auction will begin with the Opening Bid. Subsequent to the initial round of bidding, the Auction may continue, in the discretion of the Debtor in consultation with its professionals and Major Stakeholders, with one or more subsequent rounds of bidding. The minimum overbid for any such subsequent rounds shall be Fifty Thousand Dollars ($50,000.00).

f. All Qualified Bidders shall be present for each round of bidding.

g. All Qualified Bidders shall have the right, at any time, to request that the Debtor announces, subject to any potential new bids, the then-current highest or otherwise best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtor's announcement of the then current highest or otherwise best bid.

h. In the discretion of the Debtor, in consultation with its professionals and Major Stakeholders, each Qualified Bidder shall have the right to propose modifications to its Agreement at the Auction; *provided*, *however*, that any such modifications to an Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the bankruptcy estate as determined by the Debtor, in consultation with its professionals and Major Stakeholders.

i. Immediately prior to the conclusion of the Auction, the Debtor, in consultation with its professionals and Major Stakeholders (i) will review each bid made at the Auction; and (ii) determine the highest or best bid for the Property (the "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"). In making this determination, the factors that the Debtor may consider include, without limitation, the amount of the purchase price and the Qualified Bidder's ability to close a transaction and the timing thereof.

j. In addition, the Debtor shall determine, in consultation with its professionals and Major Stakeholders, which Qualified Bid, if any, is the next highest or otherwise

best Qualified Bid and designate such Qualified Bid as the "**Backup Bid**" which shall proceed to closing in the event the Successful Bidder fails to consummate the Successful Bid. A Qualified Bidder that submits the Qualified Bid that is designated as the Backup Bid is the "**Backup Bidder**." The Backup Bid shall terminate (i) automatically upon consummation of the Successful Bid, or (ii) when the Backup Bidder provides notice of termination to the Debtor in accordance with the terms of the Backup Bid. If the Successful Bid does not close, and provided that the Backup Bid has not been terminated, the Debtor shall give notice to the Backup Bidder to consummate the Backup Bid, the Debtor and the Backup Bidder shall agree upon a reasonable time period within which to close, and the Debtor shall, upon request of the Backup Bidder, seek a confirmatory order of the Bankruptcy Court of such Backup Bid.

k. At the conclusion of the Auction, any and all key terms of the Successful Bid and the Backup Bid shall be recited on the record to ensure the accuracy thereof and to aid in the final documentation of the sale. The Debtor shall file a notice with the Bankruptcy Court identifying the Successful Bid and Backup Bid on or before 6:00 p.m. prevailing Eastern time on December 16, 2026.

l. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Successful Bid, as applicable.

## SALE HEARING

22. A hearing to consider of the sale to the Purchaser or Successful Bidder will be held on December __, 2026/January __, 2027 (the "**Sale Hearing**"). At the Sale Hearing, the Debtor will seek authorization to consummate the transaction proposed by the Purchaser or the Successful Bidder. The Auction and/or the Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Columbia, E. Barrett Prettyman U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001.

23. Any objections to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objections with specificity and be filed with the Bankruptcy Court on or before December __, 2026. All such objections shall be served in accordance with the Sale and Bid Procedures Notice so as to actually be received by such date and time.

24. In the event that a Successful Bidder fails to consummate a purchase in accordance with the Successful Bid, the Backup Bidder shall be designated the Successful Bidder and the Debtor shall be directed to and authorized to effect such transaction without further order of the Bankruptcy Court. The Successful Bidder and Backup Bidder, if any, should be represented by counsel at the Confirmation Hearing.

**CONSUMMATION OF THE PURCHASE**

24. The purchase of the Property shall be consummated as set forth below.

A. Application of Earnest Money Deposit

1. If the Successful Bidder consummates the proposed sale on the terms and conditions of the Successful Bid, the Earnest Money Deposit of such Successful Bidder will be applied to the purchase price at closing.

2. If the Successful Bidder fails to consummate the proposed sale on the terms and conditions of the Successful Bid, breaches the terms and conditions of the Successful Bid, or otherwise fails to perform its obligations hereunder or thereunder, the Debtor may, and without further order of the Bankruptcy Court, deem the Successful Bidder to be a "**Defaulting Buyer**," at which time the Successful Bid shall be deemed rejected.

3. A Defaulting Buyer automatically forfeits its Earnest Money Deposit.

B. Backup Purchase

1. Upon a determination by the Debtor, in consultation with its professionals and Major Stakeholders, that the Successful Bidder is a Defaulting Buyer, the Debtor will be authorized, but not required, to consummate a sale with a Backup Bidder on the terms and conditions of the Backup Bid without further order of the Bankruptcy Court, provided that the Bankruptcy Court approved such Backup Bid at the Sale Hearing.

2. If a Backup Bidder consummates a sale on the terms and conditions of the

Backup Bid, the Earnest Money Deposit of such Backup Bidder will be applied to the purchase price at closing. In the event that the Debtor seeks to consummate a sale on the terms and conditions of a Backup Bid with a Backup Bidder and such Backup Bidder fails to consummate such sale on or before the alternative closing date, breaches its Backup Bid, or otherwise fails to perform, the Debtor may, in its business judgment and in consultation with its professionals and Major Stakeholders, and without further order of the Bankruptcy Court, deem such Backup Bidder to be a Defaulting Buyer and pursue the same remedies set forth hereinabove with respect thereto (including, but not limited to, retaining and applying the Backup Bidder's Earnest Money Deposit as part of the Debtor's damages resulting from the breach or failure to perform by the Backup Bidder).

25. These Bidding Procedures may not be modified except with the express prior written consent of (i) the Debtor and (ii) the Purchaser.