# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is made and entered into this _____ of December, 2026 (the "Effective Date") by and between **TURNER DEVELOPMENT LLC**, a District of Columbia limited liability company (the "Debtor" or "Seller") and ________________, a __________________ (the "Purchaser"; and together with "Debtor" or "Seller", the "Parties").

## RECITALS:

WHEREAS, Seller is the debtor-in-possession in Chapter 11 Case No. 26-00077-ELG (the "Bankruptcy Case"), pending under the provisions of the United States Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), which the Debtor commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on February 23, 2026 (the "Petition Date"); and

WHEREAS, Seller holds fee simple interest in and to that certain real property located at two parcels located at 1001 Old Aiken Road, North Augusta, South Carolina 29841 (Tax Parcel No. 013-12-01-001, consisting of approximately 173.5 acres and Tax Parcel No. 013-12-01-002, consisting of approximately 11.0 acres) as more particularly described in the property description which is attached and incorporated by reference as Exhibit A, together with the improvements contained thereon, including all fixtures, and subject to the easements, rights, privileges and appurtenances belonging thereto (the "Real Property"); and

WHEREAS, the sale of the Property is subject to certain auction sale and bid procedures [Docket No. __] which require Purchaser to, among other things, (i) submit to the Debtor certain credentials, (ii) submit to the Debtor Purchaser's opening bid (the "Opening Bid") using the proposed form of this Agreement approved by the Bankruptcy Court, and (iii) lodge a deposit in the amount of 10% of the Opening Bid (the "Initial Deposit") with Seller's counsel, so that Purchaser may be deemed a "Qualified Bidder" and be eligible to participate in the auction process; and

WHEREAS, Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase the Property from Seller; and

WHEREAS, Seller and Purchaser, intending to be bound by this Agreement, desire to set forth herein the terms, conditions and terms under and by which Seller shall sell and Purchaser shall purchase the Property.

## TERMS AND CONDITIONS:

NOW, THEREFORE, in consideration of the foregoing, of the covenants, promises and undertakings set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser covenant and agree as follows:

1. Property. Subject to the terms and conditions of this Agreement, and for the

consideration herein set forth, Seller agrees to sell and transfer, and Purchaser agrees to purchase and acquire, all of Seller's right, title and interest, in and to the Real Property. Seller shall also assign to Purchaser at closing, without warranty or representation of any kind, all of Seller's right, title, and interest, if any, to all studies, tests, third-party reports, plans, drawings, surveys, agreements, permits and other documents with respect to the Real Property (the "Personal Property" and together with the Real Property, the "Property").

2. Purchase Price. The purchase price for the Property shall be ____________________________ (**$**______________) (the "Purchase Price").

3. Payment Terms. The Purchaser shall pay the Purchase Price subject to the application of the Deposit (as defined in Section 4 below) and subject to any proration and/or adjustments as provided herein, in all cash or by wire transfer of immediately available funds at Closing (as defined in Section 8 below), which sum shall be disbursed to the Seller upon execution and delivery of the deed of conveyance. The Parties agree that the type of deed executed and delivered by Seller at Closing shall be a Special Warranty Deed.

4. Deposit.

A. Purchaser shall deposit (or has deposited) the Initial Deposit with its Opening Bid.

B. Within **three (3) business days** after the mutual execution of this Agreement, the Purchaser shall deposit with ____________________ (the "Settlement Agent") an additional deposit in an amount which, when combined with the Initial Deposit, shall equal 10% of the sale price (the "Additional Deposit"). The Initial Deposit and the Additional Deposit shall be referred to herein as the "Deposit". The Initial Deposit shall also be forwarded by Seller's counsel to the Settlement Agent. The Settlement Agent shall place the Deposit in an escrow account with a federally insured bank. Within two business days following receipt of the Deposit, the Settlement Agent shall provide Seller with documented evidence that the Deposit has been received and deposited into an escrow account ("Deposit Confirmation"). This Agreement is contingent upon the Purchaser placing the Deposit with the Settlement Agent. In the event the Deposit is not made within the time period required herein, then the Agreement shall automatically terminate without any additional actions by either party. Purchaser shall have no right, title or interest in the Property, and the parties shall owe no further obligations to one another. If this Agreement is voided by the Purchaser for any reason permitted under this Agreement, the Deposit shall be refunded to Purchaser, and no party hereto shall have any further rights to said Deposit.

C. The Deposit shall be held by the Settlement Agent in a non-interest-bearing escrow account and shall be applied as part payment of the Purchase Price at Closing or otherwise disposed of in accordance with the terms of this Agreement.

5. Bankruptcy Court Approval Order. This Agreement is expressly subject to entry of an order by the Bankruptcy Court in the Bankruptcy Case approving the sale of the Property to Purchaser (the "Approval Order").

6. No Inspection, Financing, or Appraisal Contingencies; Existing Property Information.

This Agreement has no inspection, financing, or appraisal contingencies. Notwithstanding the foregoing:

A. Seller shall make best efforts to deliver to Purchaser (or Purchaser's attorney), to Seller's knowledge, true and correct copies of all studies, tests, reports, plans, drawings, surveys, agreements, and documents with respect to the Property, to the extent in Seller's possession or control, including, without limitation, (i) all title policies, title commitments, title reports, title opinions, title and zoning documents, appraisals, deeds, easements, security deeds or mortgages, declarations and restrictive covenants, leases and occupancy agreements (and written correspondence with tenants and occupants), and other title exceptions; and (ii) all soil, engineering, structural, geotechnical, flood, and environmental studies, tests, reports, documents, and related correspondence (collectively, the "Existing Property Information"). Purchaser acknowledges and agrees that the Existing Property Information is being provided by Seller solely as an accommodation and courtesy to Purchaser, and Seller makes no representation or warranty, express or implied, as to the accuracy, completeness, reliability, suitability, or continued applicability of any Existing Property Information. Purchaser further acknowledges that Seller has not independently verified the Existing Property Information, that Seller shall have no liability with respect thereto, and that Purchaser shall rely solely on Purchaser's own investigations, inspections, studies, tests, title review, survey, and due diligence with respect to the Property, except to the extent expressly provided otherwise in this Agreement.

B. Seller shall make best efforts to provide access to the Real Property to Purchaser with 24 hours' written notice to Listing Broker (as defined herein) for the purpose of inspecting the Real Property and conducting non-invasive tests.

7. <u>Title and Survey</u>

A. Purchaser shall, as it deems necessary, obtain a title report and survey and a title commitment (the "Title Commitment") from the Settlement Agent, to issue an owner's and lenders policies of title insurance covering the Property; provided, however, that closing shall not be delayed if such title report and survey are not available on the Closing Date.

B. The Property shall be conveyed to Purchaser free and clear of all liens, claims, encumbrances, interests, easements, covenants, conditions, restrictions, rights, agreements, and other matters affecting title to the fullest extent permitted by the Bankruptcy Code and the Approval Order. The title conveyed to Purchaser shall be marketable and insurable by a licensed title insurance company reasonably acceptable to Purchaser, at then current standard rates under the standard form of ALTA owner's policy of title insurance, with the standard or printed exceptions therein deleted and without exception other than for the permitted exceptions, if any (the "Required Condition"). Purchaser shall not be obligated to close unless the Approval Order has been entered and the Settlement Agent is prepared to issue the owner's policy of title insurance in the Required Condition at Closing. If title is not in the Required Condition by the Closing Date, then Purchaser may deliver written notice to Seller declaring this Agreement void and the Deposit will be refunded in full to Purchaser automatically by Settlement Agent.

C. It is understood by Purchaser that the pendency of the Bankruptcy Case prohibits

the post-Petition Date creation of any lien or encumbrance on the Property without Bankruptcy Court approval. Following the Effective Date, Seller shall not cause the Property to become subject to any additional lien or encumbrance, nor shall Seller cause any additional condition, easement, or restriction affecting title to the Property. Any Approval Order entered by the Bankruptcy Court shall provide that the Property shall be sold free and clear of any and all liens, claims, encumbrances and interests—including any and all liens associated with mortgages, deeds of trust, unpaid taxes, unpaid utilities, unpaid assessments, violations, and judgments—with all valid liens, claims, encumbrances and interests attaching to the proceeds of sale in the same order of priority. The Settlement Agent may apply such portions of Seller's proceeds as may be necessary to comply with the terms of the Approval Order, including paying, releasing and discharging any mortgages, deeds of trust, unpaid taxes, unpaid utilities, unpaid assessments, violations, judgments, and/or any other liens encumbering the Property.

D. The parties authorize and direct the Settlement Agent to provide a copy of the Combined Settlement Statement to Seller, Purchaser, and Listing Broker (as defined below) reflected on the Settlement Statement.

8. <u>Closing</u>

A. Closing shall be held no later than **<u>January 7, 2027</u>** (the “Closing Date” or “Closing”).

B. At the Closing, Seller shall execute and deliver to Purchaser a Special Warranty Deed (the “Deed”), subject to those exceptions permitted by this Agreement, an I.R.C. Section 1445 non-foreign affidavit, and any other documents reasonably required by the Settlement Agent. Each party hereto shall execute and deliver such other documents necessary or appropriate to effect and complete the Closing.

C. Should Purchaser elect to obtain a survey of the Property as contemplated by Section 7A of this Agreement, Seller shall execute and deliver a quitclaim deed conveying all of Seller’s right, title and interest in and to the Property in accordance with the legal description of the Property set forth on such survey.

D. Real property taxes and any other ongoing expenses or costs of the continued operation of the Property shall be prorated as of the Closing Date. The amount of any assessment as of the Closing Date not customarily paid with real property taxes shall be paid by Seller.

E. Closing shall take place at the office of the Settlement Agent. On or prior to the Closing Date, Seller shall deposit in escrow with the Settlement Agent all documents and instruments required to be delivered by Seller in order to consummate Closing pursuant to this Agreement. Seller’s attendance at Closing shall not be required and Seller’s failure to attend Closing shall not be deemed or constitute a failure of condition or default hereunder. Additionally, Purchaser’s attendance at Closing shall not be required and Purchaser’s failure to attend Closing shall not be deemed or constitute a failure of condition or default hereunder.

F. As used in this Agreement, the term "Business Day" means any day of the year, other than Sunday, Saturday, or any other day that the Federal Reserve Bank of New York recognizes as a federal holiday.

9. Property Condition

A. The Seller assumes the risk of loss or damage to the Property by fire or other hazard between the Effective Date of this Agreement and the Closing Date. In the event of a casualty that cannot be substantially repaired before the Closing, or a taking by eminent domain, Purchaser shall have the right to terminate this Agreement and obtain the return of its Deposit by delivering written notice to Seller within ten (10) days of Seller's notice of same or proceeding to Closing and receiving a credit to the Purchase Price in an amount mutually agreeable to Purchaser and Seller. As of the Effective Date, Seller shall maintain the Property through Closing in the same condition, reasonable wear and tear excepted.

B. THE PARTIES RECOGNIZE AND AGREE THAT PURCHASER IS ACQUIRING THE PROPERTY IN "**AS-IS, WHERE-IS**" CONDITION, WITH ALL FAULTS. PURCHASER HEREBY ACKNOWLEDGES THAT IT SHALL BE ACQUIRING THE PROPERTY IN RELIANCE SOLELY UPON ITS OWN INVESTIGATIONS, STUDIES AND DUE DILIGENCE AND, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, SHALL NOT RELY ON ANY STATEMENT, REPRESENTATION, OR WARRANTY WHATSOEVER BY SELLER, LISTING BROKER, PURCHASER'S BROKER, IF ANY, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, MEMBERS, AGENTS, CONTRACTORS OR REPRESENTATIVES (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS THE "SELLER/BROKER PARTIES"). PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, THE SELLER/BROKER PARTIES MAKE NO REPRESENTATIONS OR WARRANTIES RELATING TO THE PROPERTY INCLUDING, WITHOUT LIMITATION, DESIGN, CONDITION OR REPAIR, VALUE, EXPENSE OF OPERATION, INCOME POTENTIAL, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS, RULES AND REGULATIONS, TAXES, THE EXPRESSED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER FACT OR CONDITION WHICH HAS OR MIGHT AFFECT THE PROPERTY OR THE OWNERSHIP, USE, OCCUPANCY, OPERATION, CONDITION, REPAIR, VALUE, OR INCOME POTENTIAL THEREOF.

10. Brokerage. Each party represents and warrants to the other that they have not dealt with any real estate broker, agent or finder in connection with this transaction, except for Coldwell Banker Commercial Realty ("Listing Broker") and ___________ ("Purchaser's Broker"). Each party shall be responsible for paying its own broker pursuant to a written agreement between such party and the applicable broker. Each party agrees to hold the other harmless from, and to indemnify the other against, loss or damages, including attorneys' fees, suffered by the other due to a breach of the foregoing warranty.

11. Time of Essence. Time is of the essence of this Agreement.

12. Default.

A. If Purchaser fails to close for any reason other than Seller's default or the permitted termination of this Agreement by either Seller or Purchaser as provided for in this Agreement, Seller will be entitled, as its sole and exclusive remedy, to terminate this Agreement and receive the Deposit as liquidated damages for the breach of this Agreement. It is agreed between Seller and Purchaser that the actual damages to Seller in the event of such breach are impractical to ascertain, and the amount of the Deposit is a reasonable estimate thereof.

B. In the event of any default by Seller prior to Closing in the terms of this Agreement, Purchaser may terminate this Agreement and receive a refund of the Deposit. Additionally, Purchaser shall be entitled to an administrative expense claim under section 503 of the Bankruptcy Code in an amount equal to all reasonable out-of-pocket costs and expenses actually paid or incurred by Purchaser in connection with its execution of and entry into this Agreement and its proposed acquisition of the Property, including, without limitation, any examinations, investigations, tests and inspections, undertaken by Purchaser with respect to the Property, up to and including $25,000.00, with such amount to be paid upon the sale of the Property to a third party. Subject to Purchaser's remedies specifically described above, Purchaser irrevocably waives all other rights and remedies, whether at law or in equity, including the right to record a lis pendens or similar notice against the Property.

13. Notices. Any notice required or permitted to be given hereunder must be in writing and shall be deemed to be given (i) by email transmission addressed to the parties at their respective addresses set forth below:

**If to Seller:**

Turner Development, LLC
Attn: Tracey Turner, CEO
Email: traceydturner@turnerdevelopmentllc.com

With a copy to Seller's Counsel:
Kristen E. Burgers
Hirschler
1676 International Drive, Suite 1350
Tysons, VA 22101-4940
Email: Kburgers@hirschlerlaw.com

**If to Purchaser:**

___________________________
Attn: ______________________
____________________________
____________________________
E-mail: ____________________

With a copy to Purchaser's Counsel:
___________________________
Attn: ______________________

____________________________
____________________________
E-mail: ____________________

**If to Listing Broker:** Coldwell Banker Commercial Realty
Attn: Patrick Register
Email: Patrick@cbcnrt.com

**If to Settlement Agent:** ___________________________
Attn: ______________________
____________________________
____________________________
E-mail: ____________________

or in each case to such other address as either party may from time to time designate by giving notice in writing pursuant to this Section 13 to the other party. Notices shall be deemed effective if given by counsel to either party on behalf of such party. Effective notice will be deemed given only as provided above, except as otherwise expressly provided in this Agreement.

14. Adjustments. Taxes, water and sewer charges, security deposits and operating charges (including, without limitation, utilities charges) will be adjusted to the Closing Date. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the local taxing authority, if available. Any other costs or charges of closing this transaction not specifically mentioned in this Agreement shall be paid and adjusted in accordance with local custom in the commercial real estate market in which the Property is located.

15. Closing Costs/Prorations.

A. Purchaser agrees to pay title examination and title insurance fees, all document preparation and recording fees, notary fees, survey fees where required, and all recording charges, except those incident to clearing existing encumbrances or title defects. Each party shall pay its own attorneys' fees.

B. Recordation and Transfer taxes shall be divided equally between Purchaser and Seller in accordance with local custom and practice.

16. Effect of Agreement. This Agreement shall be binding upon the Seller and Purchaser and each of their respective heirs, executors, administrators, successors and assigns; except as otherwise specifically provided herein the provisions hereof shall be merged into the Deed; this Agreement contains the final and entire Agreement between the Purchaser and Seller, and neither shall be bound by any terms, conditions, statements, warranties or representations unless contained herein or made by written agreement subsequent hereto.

17. Underground Storage Tank Disclosure. Seller advises that the Seller has no actual knowledge regarding whether or not Underground Storage Tanks (USTs) are present on the Property.

18. Lead in Paint Disclosure. Tax Parcel No. 013-12-01-0002 is improved by a historic home and other existing structures. Seller advises that the Seller has no actual knowledge regarding whether or not such structures have lead-based paint. Seller has provided Purchaser with Form 9600-040 (Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards).

19. Severability. If any provision of this Agreement or its application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

20. Applicable Law. This Agreement shall be construed and enforced in accordance with the internal laws of the District of Columbia and the Bankruptcy Code.

21. Assignability. Purchaser shall not assign its rights under this Agreement without Seller's prior written consent. Any assignment of Purchaser's rights under this Agreement in contravention of this Section shall be null and void and of no force and effect and shall constitute a material default by Purchaser under this Agreement. However, Purchaser may, without the consent of Seller but after written notice to Seller, (i) direct that the Deed be granted to an entity under common control with Purchaser by notice to Seller or (ii) assign its rights under this Agreement to an entity under common control with Purchaser. No assignment or transfer by Purchaser will release Purchaser of its obligations under this Agreement.

22. Captions; Interpretation. The captions in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Whenever the context may require, words used in this Agreement shall include the corresponding feminine, masculine, or neuter forms, and the singular shall include the plural and vice versa. Unless the context expressly indicates otherwise, all references to "Section" are to sections of this Agreement.

23. Counterparts. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument. Originals delivered by facsimile or electronic mail shall constitute an original.

24. Waiver. No waiver of any breach of any contract or provision contained herein shall be deemed a waiver of any preceding or succeeding breach of any other contract or provision herein contained. No extension of time for the performance of any obligation or act shall be deemed an extension of time for the performance of any other obligation or act.

25. Possession. Possession of the Property shall be delivered to Purchaser at Closing.

26. Broker Disclaimer: Purchaser and Seller acknowledge that, except as otherwise expressly stated herein, Listing Broker has not made any investigation, determination, warranty or

representation with respect to any of the following: (a) title to the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that leases, options or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including, but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

Purchaser agrees that investigation and analysis of the foregoing matters is Purchaser's sole responsibility and that Purchaser shall not hold Listing Broker responsible therefor. Purchaser further agrees to reaffirm its acknowledgment of this disclaimer at closing and to confirm that it has relied upon no representations of Listing Broker in connection with its acquisition of the Property.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGES TO FOLLOW]

IN WITNESS WHEREOF, Purchaser, Seller and Listing Agent have each executed this Agreement as of the day and year first hereinabove written.

**PURCHASER:**

**______________,**
a ____________________________

______________________________
By:
Title:

**SELLER:**

**TURNER DEVELOPMENT LLC,**
a District of Columbia limited liability company
**(Case No. 26-00077-ELG)**

______________________________
By: Tracey D. Turner
Title: CEO

**LISTING AGENT:**

**COLDWELL BANKER COMMERCIAL REALTY,**
a _________________________________

By: ____________________________
Name:
Its:

BANKRUPTCY ADDENDUM TO PURCHASE AGREEMENT

THIS BANKRUPTCY ADDENDUM (“Addendum”) is executed in connection with the Purchase and Sale Agreement (“Agreement”) by and between Turner Development LLC, a District of Columbia limited liability company (Case No. 26-00077-ELG) (the "Seller") and ______________, a __________________ (the “Purchaser”). In addition to the terms set forth in the Agreement, Seller and Purchaser agree that the following additional terms shall apply:

1. Capitalized terms in this Addendum shall have the same meaning as used in the Agreement.

2. The sale of the Property under the terms and conditions of the Agreement is subject to the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

3. The terms and conditions of the Agreement are subject to entry of an Approval Order by the Bankruptcy Court in the Bankruptcy Case. The Approval Order shall provide for the sale of the Property free and clear of all liens, claims, encumbrances, interests, easements, covenants, conditions, restrictions, rights, agreements, and other matters affecting title to the fullest extent permitted by the Bankruptcy Code and the Approval Order, with all valid liens, claims, encumbrances and interests attaching to the proceeds of sale in the same order of priority.

4. The terms and conditions of the Agreement are subject to higher and better offers for the purchase of the Property.

5. The Property shall be sold in its “as-is” “where-is” condition as of the date of ratification of the Agreement. Seller makes no representations as to the condition of the Property.

6. The liability of the Seller for any breach of the Agreement is expressly limited to the return of the Deposit and reimbursement to Purchaser in an amount equal to all of Purchaser’s reasonable out-of-pocket costs and expenses as more specifically described in Section 12B of the Agreement.

7. No sale commission will be due to the Listing Broker except upon a successful sale and settlement of the Property to the Purchaser.

8. Seller will convey the Property to Purchaser by Special Warranty Deed.

9. All Seller disclosures are upon information and belief only and not personal knowledge.

10. Seller shall be responsible for causing the preparation and filing of all necessary pleadings with the Bankruptcy Court in the Bankruptcy Case seeking approval of the terms and conditions of the Agreement.

11. Seller and Purchaser agree that: (a) the Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and from arm's length bargaining positions, as required by 11 U.S.C. §363(m); (b) the Purchase Price represents reasonably equivalent value for the Property to be sold to Purchaser; (c) the transactions contemplated by the Agreement will effect a legal, valid, enforceable and effective sale and transfer of the Property and shall vest Purchaser with title to the Property free and clear of all liens, claims, encumbrances and interests; (d) following entry of an Approval Order, Seller shall sell the Property to Purchaser pursuant to the terms and conditions of the Agreement; (e) the Approval Order shall remain in full force and effect notwithstanding any dismissal of the Bankruptcy Case; and (f) the Approval Order shall be binding on Seller, Purchaser, and all creditors and parties in interest.

12. All other terms and conditions of the Agreement remain in full force and effect except that if there is a conflict between this Addendum and the remaining portions of the Agreement, this Addendum will control.

**PURCHASER:**

**______________,**
a ____________________________

______________________________

**SELLER:**

**TURNER DEVELOPMENT LLC,**
a District of Columbia limited liability company
**(Case No. 26-00077-ELG)**

______________________________

# EXHIBIT A

## LEGAL DESCRIPTION

## PARCEL I

ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 195.30 Acres, more or less, comprised of the "Farm Tract" and the "Home Tract" on a plat prepared by John M. Bailey & Associates, PC, dated September 27, 2010, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 57, Page 887; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 10.83 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 60; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 11.00 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Tax Map and Parcel Number 013-12-01-001

Being the same property conveyed from Haskell Family Properties, LLC to Turner Development, LLC by that certain Title to Real Estate dated February 12, 2021, and recorded February 22, 2021, in Book 4909, Page 202, aforesaid records.

## PARCEL II

ALL that lot or parcel of land, with improvements thereon, situate, lying and being approximately One (1) mile West of Clearwater, in the State of South Carolina, County of Aiken, being shown and designated as consisting of 11.00 acres, more or less, on a plat recorded in the R.M.C. for Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Said property is conveyed subject to and with notice of the following matters: (a) drainage easements, building setback lines, and all other matters on the plat of record; and (b) general utility easements and road right-of-way grants and easements.

Said property is conveyed subject to any and all other easements and restrictions of record in the aforesaid Clerk's office.

Tax Map and Parcel Number 013-12-01-002

Being the same property conveyed from Mark Allen Richards to Turner Development, LLC by that certain Title to Real Estate dated March 12, 2021, and recorded March 18, 2021, in Book 4915, Page 402.