**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-00077-ELG |
| TURNER DEVELOPMENT, LLC, | ) | |
| | ) | (Chapter 11) |
| Debtor. | ) | |

**NOTICE OF BID PROCEDURES, AUCTION DATE,**
**AND SALE HEARING**

**NOTICE IS HEREBY GIVEN**, as follows:

1. On September 24, 2026, Turner Development, LLC, the debtor and debtor-in-possession herein (the "**Debtor**"), filed a motion ("**Bid Procedures Motion**") requesting entry of an order: (a) approving bid procedures and related deadlines for the sale of certain real property owned by the Debtor; (b) authorizing and scheduling an auction (the "**Auction**") to sell the Property; (c) scheduling a hearing (the "**Sale Hearing**") on approval of the sale of the Debtor's Property free and clear of liens, claims, encumbrances and other interests; (d) approving certain deadlines and the form, manner, and sufficiency of notice of the foregoing; and (e) granting other related relief [Docket No. 65].

The asset to be sold is certain undeveloped real property located in Aiken County, South Carolina, commonly known as 1001 Old Aiken Road, North Augusta, South Carolina 29841, comprised of Tax Parcel No. 013-12-01-001, consisting of approximately 173.5 acres and Tax Parcel No. 013-12-01-002, consisting of approximately 11.0 acres, together with all improvements, fixtures, easements, appurtenances, and other rights appurtenant thereto (collectively, the "**Real Property**"). A description of the Property (including a complete legal description) is attached hereto as Exhibit A and is incorporated herein by reference. In addition, the Debtor shall assign to the purchaser at closing, without warranty or representation of any kind, all of the Debtor's right, title, and interest, if any, to all studies, tests, third-party reports, plans, drawings, surveys, agreements, permits and other documents with respect to the Real Property (the "**Personal Property**" and together with the Real Property, the "**Property**").

2. On October 7, 2026, the Court entered an order granting the Bid Procedures Motion and approving the Bid Procedures (the "**Bid Procedures Order**") [Docket No. 71]. This

Stephen E. Leach (DC Bar No. 925735)
Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: sleach@hirschlerlaw.com
kburgers@hirschlerlaw.com

*Counsel to the Debtor*

Notice is issued pursuant to the requirements of the Bid Procedures Order. Each capitalized term in the Notice shall have the meaning ascribed to such term in the Bid Procedures Order.

3. Pursuant to the Bid Procedures Order and as set forth herein, the Property will be sold following an Auction (if more than one Qualified Bid is received) and will be sold free and clear of all liens, claims, encumbrances and other interests. The Debtor's ability to close the contemplated transaction is subject to approval of the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**").

4. The Bid Procedures provide for the following key dates in connection with the proposed sale of the Property:

| **Event** | **Date** |
|---|---|
| Deadline to submit Qualified Bids | December 8, 2026 at 6:00 p.m.[1] |
| Notification to Qualified Bidders | December 9, 2026 at 6:00 p.m. |
| Auction | December 16, 2026 at 2:00 p.m. to be held in person at the Courthouse or by Zoom. |
| Notice of Successful Bidder | As soon as practicable following the Bid Deadline if the Debtor does not receive more than one Qualified Bid or following the Auction. |
| Deadline to Object to Auction Process or Results | December 14, 2026 for written objections; oral objections to the Auction may be raised at the Sale Hearing. |
| Sale Hearing | Immediately following the Auction. |
| Outside Closing Date for the Sale of the Property | January 7, 2027 for the Successful Bidder; if the Successful Bidder fails to close, January 14, 2027 for the Back-Up Bidder; if the Successful Bidder and Back-Up Bidder fail to close, later Outside Closing Dates shall apply to certain of the Debtor's secured creditors, as set forth in the Motion. |

THESE DATES ARE SUBJECT TO CHANGE BY THE BANKRUPTCY COURT. THE DEBTOR WILL MAKE BEST EFFORTS TO KEEP ALL PARTIES INFORMED OF ANY CHANGES; HOWEVER, ALL PARTIES ARE ENCOURAGED TO CHECK THE BANKRUPTCY COURT DOCKET FOR CHANGES TO THESE DATES.

5. The Bid Procedures are attached hereto as Exhibit B.

[1] All times are prevailing Eastern Time.

6. The approved form of Purchase and Sale Agreement ("**PSA**") is attached hereto as Exhibit C.

7. Copies of the Bid Procedures Motion, the Bid Procedures Order, and the proposed form of sale order are available for review at the Office of the Clerk of the Court, United States Bankruptcy Court for the District of Columbia, E. Barrett Prettyman U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001, or upon request made to the undersigned counsel.

8. Any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a copy to Kristen E. Burgers, Esquire, Hirschler, 1676 International Drive, Suite 1350, Tysons, Virginia 22102, counsel for the Debtor. All objections must be received by December 14, 2026, the deadline set by the Court. Objections to the auction may be made orally at the Sale Hearing.

9. The Debtor has retained Coldwell Banker Commercial Realty Services ("**Coldwell Banker**") as its commercial real estate broker to market and sell the Property. Coldwell Banker has established a data room with available documentation for the Property. Interested parties may access the data room upon execution of a Non-Disclosure Agreement to be provided by Coldwell Banker. All requests for information concerning the Property should be directed to Patrick Register at Coldwell Banker Commercial Realty Services (Patrick@cbcnrt.com).

10. All other inquiries, including requests for copies of the Bid Procedures Motion, Bid Procedures Order, or PSA should be directed to counsel for the Debtor, Kristen E. Burgers, Esquire, Hirschler, 1676 International Drive, Suite 1350, Tysons, Virginia 22102 (kburgers@hirschlerlaw.com).

Dated: October 7, 2026

Respectfully submitted,

*/s/ Kristen E. Burgers*

Kristen E. Burgers (DC Bar No. 500674)
HIRSCHLER FLEISCHER, PC
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Phone: (703) 584-8900
Email: kburgers@hirschlerlaw.com

*Counsel to the Debtor*

# EXHIBIT A

## PROPERTY DESCRIPTION

For purposes of this Agreement, the term "***Property***" means and includes all of Seller's right, title, and interest in and to the following, whether now owned or hereafter acquired prior to the Closing:

1. The real property described below, together with all buildings, structures, fixtures, and other improvements located thereon;

2. All easements, rights-of-way, privileges, hereditaments, appurtenances, strips, gores, rights, and interests in adjoining streets, roads, alleys, and rights-of-way benefiting or appurtenant to the real property;

3. All development rights, density rights, air rights, water rights, utility capacity rights, access rights, ingress and egress rights, riparian rights (if any), and all other rights and interests appurtenant to or benefiting the real property;

4. All zoning rights, land use rights, governmental approvals, permits, licenses, entitlements, vested rights, site plan approvals, subdivision approvals, development agreements, and similar rights relating exclusively to the ownership, operation, use, or development of the real property, to the extent transferable;

5. All surveys, plats, engineering reports, environmental reports, geotechnical reports, traffic studies, architectural plans, site plans, construction drawings, specifications, development studies, and other books, records, files, and materials in Seller's possession or control relating exclusively to the ownership, operation, use, or development of the real property, to the extent assignable;

6. All warranties, guaranties, indemnities, claims, causes of action, and rights against third parties relating exclusively to the ownership, operation, condition, construction, or development of the real property, to the extent assignable;

7. All other rights, privileges, interests, and appurtenances owned by Seller and used exclusively in connection with, or appurtenant to, the ownership, operation, or development of the real property.

**Street Address**
1001 Old Aiken Road
North Augusta, South Carolina 29841
**Tax Map / Parcel Numbers**
013-12-01-001
013-12-01-002
**Legal Description**

## PARCEL I

ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 195.30 Acres, more or less, comprised of the “Farm Tract” and the “Home Tract” on a plat prepared by John M. Bailey & Associates, PC, dated September 27, 2010, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 57, Page 887; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 10.83 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 60; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

LESS AND EXCEPT THEREFROM ALL that lot or parcel of land, with improvements thereon, situate, lying and being in the State of South Carolina, County of Aiken, being shown and designated as Containing 11.00 acres, more or less, on a plat prepared for Heights Church, dated November 19, 2015, recorded in the Office of the Clerk of the Superior Court of Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Tax Map and Parcel Number 013-12-01-001

Being the same property conveyed from Haskell Family Properties, LLC to Turner Development, LLC by that certain Title to Real Estate dated February 12, 2021, and recorded February 22, 2021, in Book 4909, Page 202, aforesaid records.

## PARCEL II

ALL that lot or parcel of land, with improvements thereon, situate, lying and being approximately One (1) mile West of Clearwater, in the State of South Carolina, County of Aiken, being shown and designated as consisting of 11.00 acres, more or less, on a plat recorded in the R.M.C. for Aiken County, South Carolina, in Plat Book 59, Page 44; reference being made to said plat for a more complete and accurate description as to the metes, bounds, and location of said property.

Said property is conveyed subject to and with notice of the following matters: (a) drainage easements, building setback lines, and all other matters on the plat of record; and (b) general utility easements and road right-of-way grants and easements.

Said property is conveyed subject to any and all other easements and restrictions of record in the aforesaid Clerk's office.

Tax Map and Parcel Number 013-12-01-002

Being the same property conveyed from Mark Allen Richards to Turner Development, LLC by that certain Title to Real Estate dated March 12, 2021, and recorded March 18, 2021, in Book 4915, Page 402.

# EXHIBIT B

## BID PROCEDURES

1. These bid procedures (the "**Bid Procedures**") shall govern the process by which Turner Development, LLC, the debtor and debtor in possession herein (the "**Debtor**"), shall sell certain undeveloped real property located in Aiken County, South Carolina, commonly known as 1001 Old Aiken Road, North Augusta, South Carolina 29841, comprised of Tax Parcel No. 013-12-01-001, consisting of approximately 173.5 acres and Tax Parcel No. 013-12-01-002, consisting of approximately 11.0 acres, together with all improvements, fixtures, easements, appurtenances, and other rights appurtenant thereto (collectively, the "**Real Property**"). A description of the Real Property (including a complete legal description) is attached as Exhibit A to the Notice of Bid Procedures, Auction Date, and Sale Hearing (the "**Notice**") and is incorporated herein by reference. In addition, the Debtor shall assign to the purchaser at closing, without warranty or representation of any kind, all of the Debtor's right, title, and interest, if any, to all studies, tests, third-party reports, plans, drawings, surveys, agreements, permits and other documents with respect to the Real Property (the "**Personal Property**" and together with the Real Property, the "**Property**").

2. On October 7, 2026, the United States Bankruptcy Court for the District of Columbia (the "**Bankruptcy Court**") entered its order (the "**Bid Procedures Order**") (I) Approving Bid Procedures for the Sale of Real Property, (II) Approving the Form of Purchase and Sale Agreement, (III) Scheduling an Auction and Sale Hearing, (IV) Approving the Form and Manner of Notice, and (V) Granting Related Relief [Docket No. 71].

3. Interested parties requesting information about these Bid Procedures, the qualification process or due diligence should contact the Debtor's counsel as follows:

Kristen E. Burgers
Hirschler Fleischer
1676 International Drive, Suite 1350
Tysons, Virginia 22102
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: kburgers@hirschlerlaw.com

4. The Debtor shall consult with its counsel, as well as with counsel for its senior secured lender, Fuse 10, LLC ("**Fuse**") and counsel for W. Melissa Oden and James H.R. Oden, Sr., as Trustees, or their successors in trust, of the W. Melissa Oden Revocable Trust (collectively, "**Oden**" and together with Fuse, the "**Major Stakeholders**") on appropriate matters, including, without limitation, (i) determining whether a potential bidder is a Qualified Bidder; (ii) negotiating one or more agreement(s) with one or more Qualified Bidder(s); (iii) the auction of the Property pursuant to these Bid Procedures (the "**Auction**"), (iv) selecting the Successful Bidder and Back-Up Bidder at the Auction; and (v) modifying or amending the Bid Procedures.

## SALE TERMS

5. These Bid Procedures shall govern the sale of the Property. The Property is comprised of two tax parcels (Tax Parcel No. 013-12-01-001 and Tax Parcel No. 013-12-01-002). Purchasers must bid on both parcels. Multiple purchasers may submit joint bids for both parcels, provided that all other terms as set forth herein are satisfied.

6. The sale of the Property shall be on an "as is," "where is," and "with all faults" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents, or estate except as may be agreed by the Debtor subject to the approval of the Bankruptcy Court.

7. Subject to the Bankruptcy Court's approval, all of the Debtor's right, title and interest in and to the Property shall be sold free and clear of all pledges, liens, security interests,

encumbrances, claims, charges, options and interests thereon and there against (collectively, the "**Interests**") subject to and in accordance with Sections 363 and 1107 of the Bankruptcy Code, with such Interests to attach in the same amount, nature, extent and priority to the proceeds of the sale of the Property.

**DUE DILIGENCE**

8. Prior to the Auction, the Debtor shall afford any potential bidder the opportunity to conduct reasonable due diligence review. The Debtor shall provide all potential bidders certain information in connection with the proposed sale, including, but not limited to, these proposed Bid Procedures and a copy of the approved form of the PSA.

9. The Debtor has retained Coldwell Banker Commercial Realty Services ("**Coldwell Banker**") as its commercial real estate broker to market and sell the Property. Coldwell Banker has established a data room with all documentation for the Property which is currently in the Debtor's possession or control. Interested parties may access the data room upon execution of a Non-Disclosure Agreement to be provided by Coldwell Banker. All requests for information concerning the Property should be directed to Patrick Register at Coldwell Banker Commercial Realty Services (Patrick@cbcnrt.com).

10. The Debtor shall provide all additional due diligence that is reasonably requested and reasonably available. To the extent the Debtor furnishes any such potential bidder with any due diligence materials that are not already available in the virtual data room, the Debtor shall promptly add such information to the virtual data room for the benefit of all such potential bidders and the Purchaser. The Debtor will provide each potential bidder and the Purchaser with access to the Property for inspection purposes only.

11. The Debtor and its professionals do not represent or warrant the accuracy or veracity of any information that they provide to potential bidders in connection with due diligence;

*provided*, *however*, that the Debtor and its professionals represent and warrant that they have made good faith efforts to ensure that information provided to potential bidders is accurate and complete.

## DETERMINATIONS BY DEBTOR

12. After consultation with the Major Stakeholders, as appropriate, the Debtor is authorized (i) to determine whether any potential bidder is a Qualified Bidder; (ii) to coordinate the efforts of potential bidders in conducting their respective due diligence investigations; and (iii) to receive bids from Qualified Bidders (collectively, the "**Bidding Process**").

## REQUIREMENTS OF "QUALIFIED BIDDER" STATUS

13. Any potential bidder desiring to participate in the Bidding Process must be deemed a "Qualified Bidder" by the Debtor. To be deemed a Qualified Bidder, in conjunction with its bid for the Property, such bidder must deliver to the Debtor, its professionals, and Coldwell Banker:

(i) proof of funds in the amount of its opening bid;

(ii) a certification or other evidence that submission of the bid, execution, delivery and closing on the purchase of the Property is duly authorized and the prospective bidder has all requisite approvals from its board of directors or comparable governing body; and

(iv) a certified check or other good and verifiable funds in the amount of ten percent (10%) of the proposed purchase price (the "**Good Faith Deposit**").

For the avoidance of doubt, Fuse 10, LLC, the Debtor's secured lender ("**Fuse**") shall be deemed a Qualified Bidder and shall not be required to submit an additional Qualified Bid, a Good Faith Deposit, or any additional information.

14. The Good Faith Deposits shall be held by Debtor' counsel or other designated escrow agent. All Good Faith Deposits shall be returned within seventy-two (72) hours of the selection of the Successful Bidder and Back-Up Bidder as set forth herein, except for the Good Faith Deposit submitted by the Successful Bidder and the Back-Up Bidder. The Good Faith Deposits of the Successful Bidder and Back-Up Bidder shall be held in separate accounts

established by the Debtor's counsel or other designated escrow agent. If the Successful Bidder (or the Back-Up Bidder) fails to consummate an approved sale of the Property because of a breach or failure to perform on the part of such Successful Bidder (or Back-Up Bidder), such Successful Bidder's (or Back-Up Bidder's) Good Faith Deposit will be held by the Debtor subject to the terms and conditions in paragraph 25 below.

15. A Qualified Bidder that desires to make a bid for the Property shall deliver written and electronic copies of such bid, along with its qualifications and Good Faith Deposit, to the Debtor and its professionals so as to be received by no later than 6:00 p.m. prevailing Eastern Time on December 8, 2026, (the "**Opening Bid Deadline**").

**REQUIREMENTS FOR A QUALIFIED BID**

16. A "Qualified Bid" is an offer to purchase the Property that conforms, to the Debtor's satisfaction (in consultation with its professionals and the Major Stakeholders), to the following requirements:

(a) Identity of Offeror. Discloses the identity of the offeror, including without limitation the identity of the equity holders and sponsors of the offeror; *provided*, *however*, that, if the offeror is a publicly traded company, the equity holders of such offeror need not be disclosed.

(b) Form. Includes a clean, duly executed and binding purchase agreement (an "**Agreement**"), together with all exhibits, schedules, and any ancillary agreements described therein and a redline of its proposed purchase agreement compared against the form PSA.

(c) Purchase Price. Identifies the purchase price.

(d) Financial Ability. Includes evidence to the satisfaction of the Debtor, in consultation with the Debtor's professionals and Major Stakeholders, of the offeror's financial ability to consummate the transactions contemplated in the Agreement.

(e) Organizational Authority. Includes written evidence to the Debtor's satisfaction, in consultation with the Debtor's professionals and Major Stakeholders, of the authorization and approval from the offeror's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of the Agreement.

(f) Closing. Confirms that, if selected as the Successful Bidder, the offeror will consummate and fund the Agreement in accordance with its terms by a date certain.

(g) Due Diligence. Acknowledges and represents that the offeror: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its offer; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Property or the completeness of any information provided in connection therewith or the Auction other than as provided in the Agreement; and (iii) by submitting an Agreement, waives, and shall be deemed to waive, the right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code related in any way to the submission of its bid or the Bid Procedures.

(h) Good Faith Deposit. Certified check or other good and verifiable funds in the amount of ten percent (10%) of the proposed purchase price.

(i) No Collusion. By submitting a Qualified Bid, each such bidder shall be deemed to have confirmed that it has not engaged in any collusive behavior with respect to the bidding or the Auction. The Debtor reserves the right to have each Qualified Bidder re-confirm that it has not engaged in any collusive behavior with respect to the bidding or the Auction.

17. The Debtor, in its discretion, in consultation with its professionals and Major Stakeholders, may allow a potential bidder whose offer has failed to meet the requirements of a Qualified Bid additional time to cure any deficiencies. Between the Opening Bid Deadline and the Auction, the Debtor may negotiate with or seek clarification from Qualified Bidders. Each Qualified Bidder shall promptly provide to the Debtor any information reasonably required in connection with the evaluation of a Qualified Bid. Without the consent of the Debtor, in consultation with its professionals and Major Stakeholders, a Qualified Bidder may not amend, modify, or withdraw its Qualified Bid, except to increase the purchase price or otherwise improve the terms of the Qualified Bid to make them more favorable to the bankruptcy estate during the period that such Qualified Bid is required to remain irrevocable and binding.

## AUCTION

18. In the event that at least two (2) Qualified Bids are received by the Debtor by the Opening Bid Deadline, the Bankruptcy Court will conduct an Auction. The Auction, if any, shall be held in person at the United States Bankruptcy Court for the District of Columbia, E. Barrett Prettyman U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001 and by

Zoom. The bidding shall start at the amount offered in the highest Qualified Bid as determined by the Debtor in consultation with the Major Stakeholders.

19. In the event that there are no Qualified Bids submitted by the Bid Deadline, the Debtor will file a notice with the Bankruptcy Court cancelling the Auction by 6:00 p.m. on December 11, 2026 and shall request at the Sale Hearing that the Bankruptcy Court approve one or more bids to be submitted by the Major Stakeholders.

20. Except as otherwise determined by the Debtor in consultation with its professionals and Major Stakeholders, only the (i) Debtor, (ii) the Debtor's professionals, (iii) the Major Stakeholders, (iv) the Office of the United States Trustee for the Fourth Circuit, (v) Qualified Bidders, (vi) any creditor of the Debtor that, at least five (5) business days prior to the Auction, delivers to Debtor's counsel (by mail or e-mail at the address or e-mail address identified hereinabove) a written request to attend the Auction, and (vii) the respective professionals of the foregoing, shall be entitled to attend the Auction; provided that (***x***) the Debtor reserves the right to object to any request to attend the Auction made by a creditor pursuant to clause (v) immediately above, and (***y***) if the Debtor and such creditor are unable to consensually resolve such objection promptly, the Debtor shall seek a teleconference with the Bankruptcy Court prior to the Auction to adjudicate such objection. Only Qualified Bidders (including the Purchaser) are eligible to participate in the Auction.

21. The Auction shall be governed by the following procedures:

a. Qualified Bidders shall appear at the Auction in person, or through a duly authorized representative who has all requisite authority to legally bind such Qualified Bidder.

b. The Bankruptcy Court shall conduct the Auction in the manner that will result in the Successful Bid that will maximize the overall value of the Property to the creditors and the Debtor's estate, and may adopt and modify rules for the Auction at the Auction that, in the Court's discretion, will better promote the goals of the Auction and that are not materially inconsistent with any of the provisions of the Bid Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court. All such rules will provide that: (i) the Auction procedures must be fairly and evenly administered, and not intended to cause any participating Qualified Bidder to

be disadvantaged in any material way with respect to the process as compared to any other participating Qualified Bidder; and (ii) all participating Qualified Bidders (or their authorized representatives) shall be entitled to be present for all bidding and that the terms of each Qualified Bid shall be fully disclosed or available to all other Qualified Bidders throughout the entire Auction. Each bid by a Qualified Bidder at the Auction, if not inconsistent with the provisions of these Bid Procedures, shall be deemed to constitute a Qualified Bid.

c. The Court will record the actual bidding at the Auction.

d. No later than one (1) hour prior to the commencement of the Auction, the Debtor, in consultation with its professionals and Major Stakeholders, shall determine (i) the then-current highest or otherwise best bid (the "**Opening Bid**").

e. The Auction will begin with the Opening Bid. Subsequent to the initial round of bidding, the Auction may continue with one or more subsequent rounds of bidding. The minimum overbid for any such subsequent rounds shall be Fifty Thousand Dollars ($50,000.00) or such other sum as the Bankruptcy Court, sitting as auctioneer, shall deem advisable in its sole and absolute discretion.

f. All Qualified Bidders shall be present for each round of bidding.

g. All Qualified Bidders shall have the right, at any time, to request that the Court announce, subject to any potential new bids, the then-current highest or otherwise best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Court's announcement of the then current highest or otherwise best bid.

h. In the discretion of the Debtor, in consultation with its professionals and Major Stakeholders, each Qualified Bidder shall have the right to propose modifications to its Agreement at the Auction; *provided, however*, that any such modifications to an Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the bankruptcy estate as determined by the Debtor, in consultation with its professionals and Major Stakeholders.

i. Immediately prior to the conclusion of the Auction, the Debtor, in consultation with its professionals and Major Stakeholders (i) will review each bid made at the Auction; and (ii) determine the highest or best bid for the Property (the "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"). In making this determination, the factors that the Debtor may consider include, without limitation, the amount of the purchase price and the Qualified Bidder's ability to close a transaction and the timing thereof. The Debtor shall then recommend its selection of the Successful Bidder and Successful Bid to the Court.

j. In addition, the Debtor shall determine, in consultation with its professionals and Major Stakeholders, which Qualified Bid, if any, is the next highest or otherwise best Qualified Bid and designate such Qualified Bid as the "**Back-Up Bid**" which shall proceed to closing in the event the Successful Bidder fails to consummate the Successful Bid. The Debtor shall then recommend its selection of the Back-Up Bidder and Back-Up Bid to the Court. A Qualified Bidder that submits the Qualified Bid that is designated as the Back-Up Bid is the "**Back-**

**Up Bidder**." The Back-Up Bid shall terminate (i) automatically upon consummation of the Successful Bid, or (ii) when the Back-Up Bidder provides notice of termination to the Debtor in accordance with the terms of the Back-Up Bid. If the Successful Bid does not close, and provided that the Back-Up Bid has not been terminated, the Debtor shall give notice to the Back-Up Bidder to consummate the Back-Up Bid, the Debtor and the Back-Up Bidder shall agree upon a reasonable time period within which to close, and the Debtor shall, upon request of the Back-Up Bidder, seek a confirmatory order of the Bankruptcy Court of such Back-Up Bid.

k. The Bankruptcy Court shall make the final determination of the Successful Bid and Back-Up Bid. At the conclusion of the Auction, any and all key terms of the Successful Bid and the Back-Up Bid shall be recited on the record to ensure the accuracy thereof and to aid in the final documentation of the sale. The Debtor shall file a notice with the Bankruptcy Court identifying the Successful Bid and Back-Up Bid on or before 6:00 p.m. prevailing Eastern time on December 16, 2026.

l. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Successful Bid, as applicable.

m. Within three (3) business days following the conclusion of the Auction, the Successful Bidder and the Backup Bidder (other than Fuse) shall increase their respective Good Faith Deposits so that each deposit equals ten percent (10%) of its final bid as determined at the Auction (the "**Earnest Money Deposit**"). Fuse shall not be required to post any deposit in connection with its credit bid under section 363(k) of the Bankruptcy Code.

## SALE HEARING

22. A hearing to consider the sale to the Purchaser or Successful Bidder will be held immediately following the Auction (the "**Sale Hearing**"). At the Sale Hearing, the Debtor will seek authorization to consummate the transactions proposed by the Successful Bidder and the Backup Bidder. The Auction and/or the Sale Hearing may be adjourned in open court from time to time, without further notice. The Sale Hearing will be held before the Bankruptcy Court.

23. Any objections to any of the relief to be requested at the Sale Hearing (other than with respect to the auction process) must be in writing, state the basis of such objections with specificity and be filed with the Bankruptcy Court on or before 6:00 p.m. on December 14, 2026. All such objections shall be served in accordance with the Sale and Bid Procedures Notice so as

to actually be received by such date and time. Objections to the Auction process may be made orally at the Sale Hearing.

24. In the event that a Successful Bidder fails to consummate a purchase in accordance with the Successful Bid, the Back-Up Bidder shall be designated the Successful Bidder and the Debtor shall be directed to and authorized to effect such transaction without further order of the Bankruptcy Court. The Successful Bidder and Back-Up Bidder, if any, should be represented by counsel at the Sale Hearing.

**CONSUMMATION OF THE PURCHASE**

25. The purchase of the Property shall be consummated as set forth below.

A. Application of Earnest Money Deposit

1. If the Successful Bidder consummates the proposed sale on the terms and conditions of the Successful Bid, the Earnest Money Deposit of such Successful Bidder will be applied to the purchase price at closing. Closing on the Successful Bid must occur on or before January 7, 2027.

2. If the Successful Bidder fails to consummate the proposed sale on the terms and conditions of the Successful Bid, breaches the terms and conditions of the Successful Bid, or otherwise fails to perform its obligations hereunder or thereunder, the Debtor may, and without further order of the Bankruptcy Court, deem the Successful Bidder to be a "**Defaulting Buyer**," at which time the Successful Bid shall be deemed rejected.

3. A Defaulting Buyer automatically forfeits its Earnest Money Deposit.

B. Back-Up Purchase

1. Upon a determination by the Debtor, in consultation with its professionals and Major Stakeholders, that the Successful Bidder is a Defaulting Buyer, the Debtor will be authorized to consummate a sale with a Back-Up Bidder on the terms and conditions of the Back-

Up Bid without further order of the Bankruptcy Court, provided that the Bankruptcy Court approved such Back-Up Bid at the Sale Hearing. Closing on the Back-Up Bid must occur on or before January 14, 2027.

2. If a Back-Up Bidder consummates a sale on the terms and conditions of the Back-Up Bid, the Earnest Money Deposit of such Back-Up Bidder will be applied to the purchase price at closing. In the event that the Debtor seeks to consummate a sale on the terms and conditions of a Back-Up Bid with a Back-Up Bidder and such Back-Up Bidder fails to consummate such sale on or before the alternative closing date, breaches its Back-Up Bid, or otherwise fails to perform, the Debtor may, in its business judgment and in consultation with its professionals and Major Stakeholders, and without further order of the Bankruptcy Court, deem such Back-Up Bidder to be a Defaulting Buyer and pursue the same remedies set forth hereinabove with respect thereto (including, but not limited to, retaining and applying the Back-Up Bidder's Earnest Money Deposit as part of the Debtor's damages resulting from the breach or failure to perform by the Back-Up Bidder).

26. In the event that the Successful Bidder and Back-Up Bidder are each a Defaulting Buyer, W. Melissa Oden and James H.R. Oden, Sr., as Trustees, or their successors in trust, of the W. Melissa Oden Revocable Trust ("**Oden**"), have the right, but not the obligation, to purchase the Property for $3,500,000 on or before January 21, 2027. If Oden declines to consummate the purchase or cannot close on or before January 21, 2027, Fuse shall have the right, but not the obligation, to purchase the Property for $3,000,000 on or before January 28, 2027, which amount may include a credit bid of all or a portion of Fuse's allowed secured claim. For the avoidance of

doubt, Oden shall not be allowed to include a credit bid component in the option to purchase the Property for $3,500,000.

27. These Bidding Procedures may not be modified except with the express prior written consent of the Debtor and the Major Stakeholders.

# EXHIBIT C

## FORM OF PURCHASE AND SALE AGREEMENT

# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is made and entered into this _____ of December, 2026 (the "Effective Date") by and between **TURNER DEVELOPMENT LLC**, a District of Columbia limited liability company (the "Debtor" or "Seller") and ________________, a __________________ (the "Purchaser"; and together with "Debtor" or "Seller", the "Parties").

## RECITALS:

WHEREAS, Seller is the debtor-in-possession in Chapter 11 Case No. 26-00077-ELG (the "Bankruptcy Case"), pending under the provisions of the United States Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"), which the Debtor commenced by the filing of a voluntary petition under Chapter 11 of the Bankruptcy Code on February 23, 2026 (the "Petition Date"); and

WHEREAS, Seller holds fee simple interest in and to that certain real property located at two parcels located at 1001 Old Aiken Road, North Augusta, South Carolina 29841 (Tax Parcel No. 013-12-01-001, consisting of approximately 173.5 acres and Tax Parcel No. 013-12-01-002, consisting of approximately 11.0 acres) as more particularly described in the property description which is attached and incorporated by reference as Exhibit A, together with the improvements contained thereon, including all fixtures, and subject to the easements, rights, privileges and appurtenances belonging thereto (the "Real Property"); and

WHEREAS, the sale of the Property is subject to certain auction sale and bid procedures [Docket No. __] which require Purchaser to, among other things, (i) submit to the Debtor certain credentials, (ii) submit to the Debtor Purchaser's opening bid (the "Opening Bid") using the proposed form of this Agreement approved by the Bankruptcy Court, and (iii) lodge a deposit in the amount of 10% of the Opening Bid (the "Initial Deposit") with Seller's counsel, so that Purchaser may be deemed a "Qualified Bidder" and be eligible to participate in the auction process; and

WHEREAS, Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase the Property from Seller; and

WHEREAS, Seller and Purchaser, intending to be bound by this Agreement, desire to set forth herein the terms, conditions and terms under and by which Seller shall sell and Purchaser shall purchase the Property.

## TERMS AND CONDITIONS:

NOW, THEREFORE, in consideration of the foregoing, of the covenants, promises and undertakings set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser covenant and agree as follows:

1. Property. Subject to the terms and conditions of this Agreement, and for the consideration herein set forth, Seller agrees to sell and transfer, and Purchaser agrees to purchase and acquire, all of Seller's right, title and interest, in and to the Real Property. Seller shall also assign to Purchaser at closing, without warranty or representation of any kind, all of Seller's right, title, and interest, if any, to all studies, tests, third-party reports, plans, drawings, surveys, agreements, permits and other documents with respect to the Real Property (the "Personal Property" and together with the Real Property, the "Property").

2. Purchase Price. The purchase price for the Property shall be ____________________________ (**$**______________) (the "Purchase Price").

3. Payment Terms. The Purchaser shall pay the Purchase Price subject to the application of the Deposit (as defined in Section 4 below) and subject to any proration and/or adjustments as provided herein, in all cash or by wire transfer of immediately available funds at Closing (as defined in Section 8 below), which sum shall be disbursed to the Seller upon execution and delivery of the deed of conveyance. The Parties agree that the type of deed executed and delivered by Seller at Closing shall be a Special Warranty Deed.

4. Deposit.

A. Purchaser shall deposit (or has deposited) the Initial Deposit with its Opening Bid.

B. Within **three (3) business days** after the mutual execution of this Agreement, the Purchaser shall deposit with ____________________ (the "Settlement Agent") an additional deposit in an amount which, when combined with the Initial Deposit, shall equal 10% of the sale price (the "Additional Deposit"). The Initial Deposit and the Additional Deposit shall be referred to herein as the "Deposit". The Initial Deposit shall also be forwarded by Seller's counsel to the Settlement Agent. The Settlement Agent shall place the Deposit in an escrow account with a federally insured bank. Within two business days following receipt of the Deposit, the Settlement Agent shall provide Seller with documented evidence that the Deposit has been received and deposited into an escrow account ("Deposit Confirmation"). This Agreement is contingent upon the Purchaser placing the Deposit with the Settlement Agent. In the event the Deposit is not made within the time period required herein, then the Agreement shall automatically terminate without any additional actions by either party. Purchaser shall have no right, title or interest in the Property, and the parties shall owe no further obligations to one another. If this Agreement is voided by the Purchaser for any reason permitted under this Agreement, the Deposit shall be refunded to Purchaser, and no party hereto shall have any further rights to said Deposit.

C. The Deposit shall be held by the Settlement Agent in a non-interest-bearing escrow account and shall be applied as part payment of the Purchase Price at Closing or otherwise disposed of in accordance with the terms of this Agreement.

5. Bankruptcy Court Approval Order. This Agreement is expressly subject to entry of an order by the Bankruptcy Court in the Bankruptcy Case approving the sale of the Property to Purchaser (the "Approval Order").

6. No Inspection, Financing, or Appraisal Contingencies; Existing Property Information. This Agreement has no inspection, financing, or appraisal contingencies. Notwithstanding the foregoing:

A. Seller shall make best efforts to deliver to Purchaser (or Purchaser's attorney), to Seller's knowledge, true and correct copies of all studies, tests, reports, plans, drawings, surveys, agreements, and documents with respect to the Property, to the extent in Seller's possession or control, including, without limitation, (i) all title policies, title commitments, title reports, title opinions, title and zoning documents, appraisals, deeds, easements, security deeds or mortgages, declarations and restrictive covenants, leases and occupancy agreements (and written correspondence with tenants and occupants), and other title exceptions; and (ii) all soil, engineering, structural, geotechnical, flood, and environmental studies, tests, reports, documents, and related correspondence (collectively, the "Existing Property Information"). Purchaser acknowledges and agrees that the Existing Property Information is being provided by Seller solely as an accommodation and courtesy to Purchaser, and Seller makes no representation or warranty, express or implied, as to the accuracy, completeness, reliability, suitability, or continued applicability of any Existing Property Information. Purchaser further acknowledges that Seller has not independently verified the Existing Property Information, that Seller shall have no liability with respect thereto, and that Purchaser shall rely solely on Purchaser's own investigations, inspections, studies, tests, title review, survey, and due diligence with respect to the Property, except to the extent expressly provided otherwise in this Agreement.

B. Seller shall make best efforts to provide access to the Real Property to Purchaser with 24 hours' written notice to Listing Broker (as defined herein) for the purpose of inspecting the Real Property and conducting non-invasive tests.

7. Title and Survey

A. Purchaser shall, as it deems necessary, obtain a title report and survey and a title commitment (the "Title Commitment") from the Settlement Agent, to issue an owner's and lenders policies of title insurance covering the Property; provided, however, that closing shall not be delayed if such title report and survey are not available on the Closing Date.

B. The Property shall be conveyed to Purchaser free and clear of all liens, claims, encumbrances, interests, easements, covenants, conditions, restrictions, rights, agreements, and other matters affecting title to the fullest extent permitted by the Bankruptcy Code and the Approval Order. The title conveyed to Purchaser shall be marketable and insurable by a licensed title insurance company reasonably acceptable to Purchaser, at then current standard rates under the standard form of ALTA owner's policy of title insurance, with the standard or printed exceptions therein deleted and without exception other than for the permitted exceptions, if any (the "Required Condition"). Purchaser shall not be obligated to close unless the Approval Order has been entered and the Settlement Agent is prepared to issue the owner's policy of title insurance in the Required Condition at Closing. If title is not in the Required Condition by the Closing Date, then Purchaser may deliver written notice to Seller declaring this Agreement void and the Deposit will be refunded in full to Purchaser automatically by Settlement Agent.

C. It is understood by Purchaser that the pendency of the Bankruptcy Case prohibits the post-Petition Date creation of any lien or encumbrance on the Property without Bankruptcy Court approval. Following the Effective Date, Seller shall not cause the Property to become subject to any additional lien or encumbrance, nor shall Seller cause any additional condition, easement, or restriction affecting title to the Property. Any Approval Order entered by the Bankruptcy Court shall provide that the Property shall be sold free and clear of any and all liens, claims, encumbrances and interests—including any and all liens associated with mortgages, deeds of trust, unpaid taxes, unpaid utilities, unpaid assessments, violations, and judgments—with all valid liens, claims, encumbrances and interests attaching to the proceeds of sale in the same order of priority. The Settlement Agent may apply such portions of Seller's proceeds as may be necessary to comply with the terms of the Approval Order, including paying, releasing and discharging any mortgages, deeds of trust, unpaid taxes, unpaid utilities, unpaid assessments, violations, judgments, and/or any other liens encumbering the Property.

D. The parties authorize and direct the Settlement Agent to provide a copy of the Combined Settlement Statement to Seller, Purchaser, and Listing Broker (as defined below) reflected on the Settlement Statement.

8. Closing

A. Closing shall be held no later than **January 7, 2027** (the “Closing Date” or “Closing”).

B. At the Closing, Seller shall execute and deliver to Purchaser a Special Warranty Deed (the “Deed”), subject to those exceptions permitted by this Agreement, an I.R.C. Section 1445 non-foreign affidavit, and any other documents reasonably required by the Settlement Agent. Each party hereto shall execute and deliver such other documents necessary or appropriate to effect and complete the Closing.

C. Should Purchaser elect to obtain a survey of the Property as contemplated by Section 7A of this Agreement, Seller shall execute and deliver a quitclaim deed conveying all of Seller’s right, title and interest in and to the Property in accordance with the legal description of the Property set forth on such survey.

D. Real property taxes and any other ongoing expenses or costs of the continued operation of the Property shall be prorated as of the Closing Date. The amount of any assessment as of the Closing Date not customarily paid with real property taxes shall be paid by Seller.

E. Closing shall take place at the office of the Settlement Agent. On or prior to the Closing Date, Seller shall deposit in escrow with the Settlement Agent all documents and instruments required to be delivered by Seller in order to consummate Closing pursuant to this Agreement. Seller’s attendance at Closing shall not be required and Seller’s failure to attend Closing shall not be deemed or constitute a failure of condition or default hereunder. Additionally, Purchaser’s attendance at Closing shall not be required and Purchaser’s failure to attend Closing shall not be deemed or constitute a failure of condition or default hereunder.

F. As used in this Agreement, the term "Business Day" means any day of the year, other than Sunday, Saturday, or any other day that the Federal Reserve Bank of New York recognizes as a federal holiday.

9. Property Condition

A. The Seller assumes the risk of loss or damage to the Property by fire or other hazard between the Effective Date of this Agreement and the Closing Date. In the event of a casualty that cannot be substantially repaired before the Closing, or a taking by eminent domain, Purchaser shall have the right to terminate this Agreement and obtain the return of its Deposit by delivering written notice to Seller within ten (10) days of Seller's notice of same or proceeding to Closing and receiving a credit to the Purchase Price in an amount mutually agreeable to Purchaser and Seller. As of the Effective Date, Seller shall maintain the Property through Closing in the same condition, reasonable wear and tear excepted.

B. THE PARTIES RECOGNIZE AND AGREE THAT PURCHASER IS ACQUIRING THE PROPERTY IN "**AS-IS, WHERE-IS**" CONDITION, WITH ALL FAULTS. PURCHASER HEREBY ACKNOWLEDGES THAT IT SHALL BE ACQUIRING THE PROPERTY IN RELIANCE SOLELY UPON ITS OWN INVESTIGATIONS, STUDIES AND DUE DILIGENCE AND, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, SHALL NOT RELY ON ANY STATEMENT, REPRESENTATION, OR WARRANTY WHATSOEVER BY SELLER, LISTING BROKER, PURCHASER'S BROKER, IF ANY, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, MEMBERS, AGENTS, CONTRACTORS OR REPRESENTATIVES (COLLECTIVELY REFERRED TO IN THIS AGREEMENT AS THE "SELLER/BROKER PARTIES"). PURCHASER UNDERSTANDS AND ACKNOWLEDGES THAT, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, THE SELLER/BROKER PARTIES MAKE NO REPRESENTATIONS OR WARRANTIES RELATING TO THE PROPERTY INCLUDING, WITHOUT LIMITATION, DESIGN, CONDITION OR REPAIR, VALUE, EXPENSE OF OPERATION, INCOME POTENTIAL, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS, RULES AND REGULATIONS, TAXES, THE EXPRESSED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER FACT OR CONDITION WHICH HAS OR MIGHT AFFECT THE PROPERTY OR THE OWNERSHIP, USE, OCCUPANCY, OPERATION, CONDITION, REPAIR, VALUE, OR INCOME POTENTIAL THEREOF.

10. Brokerage. Each party represents and warrants to the other that they have not dealt with any real estate broker, agent or finder in connection with this transaction, except for Coldwell Banker Commercial Realty ("Listing Broker") and ___________ ("Purchaser's Broker"). Each party shall be responsible for paying its own broker pursuant to a written agreement between such party and the applicable broker. Each party agrees to hold the other harmless from, and to indemnify the other against, loss or damages, including attorneys' fees, suffered by the other due to a breach of the foregoing warranty.

11. Time of Essence. Time is of the essence of this Agreement.

12. Default.

A. If Purchaser fails to close for any reason other than Seller's default or the permitted termination of this Agreement by either Seller or Purchaser as provided for in this Agreement, Seller will be entitled, as its sole and exclusive remedy, to terminate this Agreement and receive the Deposit as liquidated damages for the breach of this Agreement. It is agreed between Seller and Purchaser that the actual damages to Seller in the event of such breach are impractical to ascertain, and the amount of the Deposit is a reasonable estimate thereof.

B. In the event of any default by Seller prior to Closing in the terms of this Agreement, Purchaser may terminate this Agreement and receive a refund of the Deposit. Additionally, Purchaser shall be entitled to an administrative expense claim under section 503 of the Bankruptcy Code in an amount equal to all reasonable out-of-pocket costs and expenses actually paid or incurred by Purchaser in connection with its execution of and entry into this Agreement and its proposed acquisition of the Property, including, without limitation, any examinations, investigations, tests and inspections, undertaken by Purchaser with respect to the Property, up to and including $25,000.00, with such amount to be paid upon the sale of the Property to a third party. Subject to Purchaser's remedies specifically described above, Purchaser irrevocably waives all other rights and remedies, whether at law or in equity, including the right to record a lis pendens or similar notice against the Property.

13. Notices. Any notice required or permitted to be given hereunder must be in writing and shall be deemed to be given (i) by email transmission addressed to the parties at their respective addresses set forth below:

**If to Seller:**

Turner Development, LLC
Attn: Tracey Turner, CEO
Email: traceydturner@turnerdevelopmentllc.com

With a copy to Seller's Counsel:
Kristen E. Burgers
Hirschler
1676 International Drive, Suite 1350
Tysons, VA 22101-4940
Email: Kburgers@hirschlerlaw.com

**If to Purchaser:**

___________________________
Attn: ______________________
____________________________
____________________________
E-mail: _________________________

With a copy to Purchaser's Counsel:
___________________________

Attn: ____________________
_________________________
_________________________
E-mail: ______________________

**If to Listing Broker:** Coldwell Banker Commercial Realty
Attn: Patrick Register
Email: Patrick@cbcnrt.com

**If to Settlement Agent:** ________________________
Attn: ____________________
_________________________
_________________________
E-mail: ______________________

or in each case to such other address as either party may from time to time designate by giving notice in writing pursuant to this Section 13 to the other party. Notices shall be deemed effective if given by counsel to either party on behalf of such party. Effective notice will be deemed given only as provided above, except as otherwise expressly provided in this Agreement.

14. Adjustments. Taxes, water and sewer charges, security deposits and operating charges (including, without limitation, utilities charges) will be adjusted to the Closing Date. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the local taxing authority, if available. Any other costs or charges of closing this transaction not specifically mentioned in this Agreement shall be paid and adjusted in accordance with local custom in the commercial real estate market in which the Property is located.

15. Closing Costs/Prorations.

A. Purchaser agrees to pay title examination and title insurance fees, all document preparation and recording fees, notary fees, survey fees where required, and all recording charges, except those incident to clearing existing encumbrances or title defects. Each party shall pay its own attorneys' fees.

B. Recordation and Transfer taxes shall be divided equally between Purchaser and Seller in accordance with local custom and practice.

16. Effect of Agreement. This Agreement shall be binding upon the Seller and Purchaser and each of their respective heirs, executors, administrators, successors and assigns; except as otherwise specifically provided herein the provisions hereof shall be merged into the Deed; this Agreement contains the final and entire Agreement between the Purchaser and Seller, and neither shall be bound by any terms, conditions, statements, warranties or representations unless contained herein or made by written agreement subsequent hereto.

17. Underground Storage Tank Disclosure. Seller advises that the Seller has no actual knowledge regarding whether or not Underground Storage Tanks (USTs) are present on the Property.

18. Lead in Paint Disclosure. Tax Parcel No. 013-12-01-0002 is improved by a historic home and other existing structures. Seller advises that the Seller has no actual knowledge regarding whether or not such structures have lead-based paint. Seller has provided Purchaser with Form 9600-040 (Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards).

19. Severability. If any provision of this Agreement or its application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

20. Applicable Law. This Agreement shall be construed and enforced in accordance with the internal laws of the District of Columbia and the Bankruptcy Code.

21. Assignability. Purchaser shall not assign its rights under this Agreement without Seller's prior written consent. Any assignment of Purchaser's rights under this Agreement in contravention of this Section shall be null and void and of no force and effect and shall constitute a material default by Purchaser under this Agreement. However, Purchaser may, without the consent of Seller but after written notice to Seller, (i) direct that the Deed be granted to an entity under common control with Purchaser by notice to Seller or (ii) assign its rights under this Agreement to an entity under common control with Purchaser. No assignment or transfer by Purchaser will release Purchaser of its obligations under this Agreement.

22. Captions; Interpretation. The captions in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope of this Agreement or the scope or content of any of its provisions. Whenever the context may require, words used in this Agreement shall include the corresponding feminine, masculine, or neuter forms, and the singular shall include the plural and vice versa. Unless the context expressly indicates otherwise, all references to "Section" are to sections of this Agreement.

23. Counterparts. This Agreement may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument. Originals delivered by facsimile or electronic mail shall constitute an original.

24. Waiver. No waiver of any breach of any contract or provision contained herein shall be deemed a waiver of any preceding or succeeding breach of any other contract or provision herein contained. No extension of time for the performance of any obligation or act shall be deemed an extension of time for the performance of any other obligation or act.

25. Possession. Possession of the Property shall be delivered to Purchaser at Closing.

26. Broker Disclaimer: Purchaser and Seller acknowledge that, except as otherwise expressly stated herein, Listing Broker has not made any investigation, determination, warranty or representation with respect to any of the following: (a) title to the Property; (b) the legality of the present or any possible future use of the Property under any federal, state or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that leases, options or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including, but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

Purchaser agrees that investigation and analysis of the foregoing matters is Purchaser's sole responsibility and that Purchaser shall not hold Listing Broker responsible therefor. Purchaser further agrees to reaffirm its acknowledgment of this disclaimer at closing and to confirm that it has relied upon no representations of Listing Broker in connection with its acquisition of the Property.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGES TO FOLLOW]

IN WITNESS WHEREOF, Purchaser, Seller and Listing Agent have each executed this Agreement as of the day and year first hereinabove written.

**PURCHASER:**

**_____________,**
a __________________________

By:
Title:

**SELLER:**

**TURNER DEVELOPMENT LLC,**
a District of Columbia limited liability company
**(Case No. 26-00077-ELG)**

By: Tracey D. Turner
Title: CEO

**LISTING AGENT:**

**COLDWELL BANKER COMMERCIAL REALTY,**
a _________________________________

By: ___________________________
Name:
Its:

# BANKRUPTCY ADDENDUM TO PURCHASE AGREEMENT

THIS BANKRUPTCY ADDENDUM ("Addendum") is executed in connection with the Purchase and Sale Agreement ("Agreement") by and between Turner Development LLC, a District of Columbia limited liability company (Case No. 26-00077-ELG) (the "Seller") and _____________, a _________________ (the "Purchaser"). In addition to the terms set forth in the Agreement, Seller and Purchaser agree that the following additional terms shall apply:

1. Capitalized terms in this Addendum shall have the same meaning as used in the Agreement.

2. The sale of the Property under the terms and conditions of the Agreement is subject to the notice and hearing requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court.

3. The terms and conditions of the Agreement are subject to entry of an Approval Order by the Bankruptcy Court in the Bankruptcy Case. The Approval Order shall provide for the sale of the Property free and clear of all liens, claims, encumbrances, interests, easements, covenants, conditions, restrictions, rights, agreements, and other matters affecting title to the fullest extent permitted by the Bankruptcy Code and the Approval Order, with all valid liens, claims, encumbrances and interests attaching to the proceeds of sale in the same order of priority.

4. The terms and conditions of the Agreement are subject to higher and better offers for the purchase of the Property.

5. The Property shall be sold in its "as-is" "where-is" condition as of the date of ratification of the Agreement. Seller makes no representations as to the condition of the Property.

6. The liability of the Seller for any breach of the Agreement is expressly limited to the return of the Deposit and reimbursement to Purchaser in an amount equal to all of Purchaser's reasonable out-of-pocket costs and expenses as more specifically described in Section 12B of the Agreement.

7. No sale commission will be due to the Listing Broker except upon a successful sale and settlement of the Property to the Purchaser.

8. Seller will convey the Property to Purchaser by Special Warranty Deed.

9. All Seller disclosures are upon information and belief only and not personal knowledge.

10. Seller shall be responsible for causing the preparation and filing of all necessary pleadings with the Bankruptcy Court in the Bankruptcy Case seeking approval of the terms and conditions of the Agreement.

11. Seller and Purchaser agree that: (a) the Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and from arm's length bargaining

positions, as required by 11 U.S.C. §363(m); (b) the Purchase Price represents reasonably equivalent value for the Property to be sold to Purchaser; (c) the transactions contemplated by the Agreement will effect a legal, valid, enforceable and effective sale and transfer of the Property and shall vest Purchaser with title to the Property free and clear of all liens, claims, encumbrances and interests; (d) following entry of an Approval Order, Seller shall sell the Property to Purchaser pursuant to the terms and conditions of the Agreement; (e) the Approval Order shall remain in full force and effect notwithstanding any dismissal of the Bankruptcy Case; and (f) the Approval Order shall be binding on Seller, Purchaser, and all creditors and parties in interest.

12. All other terms and conditions of the Agreement remain in full force and effect except that if there is a conflict between this Addendum and the remaining portions of the Agreement, this Addendum will control.

**PURCHASER:**

**______________,**

a ___________________________

______________________________________

**SELLER:**

**TURNER DEVELOPMENT LLC,**

a District of Columbia limited liability company

**(Case No. 26-00077-ELG)**

______________________________________